BEATTIE v MICKALICH

Docket No. 284130. Submitted June 2, 2009, at Lansing. Decided June
25, 2009, at 9:00 a.m.

Trina L. Beattie brought a negligence action in the Lapeer Circuit
Court against Mark P. Mickalich after sustaining injury when a
horse owned by the defendant, and held by the plaintiff with a
rope, reared up and pulled the plaintiff up from the ground as the
defendant was saddling the horse. The defendant moved for
summary disposition, claiming that the action is barred by MCL
691.1663, § 3 of the Equine Activity Liability Act (EALA), because
the plaintiff's injury arose from an inherent risk of equine activity.
The court, Nick O. Holowka, J., granted the motion, rejecting the
plaintiff's contention that two exceptions to nonliability provided
in the EALA applied. The plaintiff appealed.

The Court of Appeals held:

1. MCL 691.1663 states that except as otherwise provided in
MCL 691.1665, an equine activity sponsor, an equine professional, or
another person is not liable for injury to or the death of a participant,
or for property damage, resulting from an inherent risk of an equine
activity. MCL 691.1662(f) defines "inherent risk of an equine activity"
as a danger or condition that is an integral part of an equine activity,
such as an equine's propensity to behave in certain ways and react
unpredictably to things. MCL 691.1665 provides four exceptions to
the immunity granted by MCL 691.1663. MCL 691.1665(b) imposes
liability if an equine activity sponsor, equine professional, or another
person provides an equine and fails to make reasonable and prudent
efforts to determine the ability of the participant to engage safely in
equine activity and to determine the ability of the participant to
safely manage the particular equine. MCL 691.1665(d) imposes
liability if an equine activity sponsor, equine professional, or another
person commits a negligent act or omission that constitutes a
proximate cause of the injury, death, or damage.

2. MCL 691.1665(d) does not permit a general negligence claim
irrespective of the EALA limitations on liability. All of the conduct
described in MCL 691.1665 falls outside the definition of "inherent
risk of equine activity," which activity is the only activity for which
the EALA precludes liability pursuant to MCL 691.1663. The

instances enumerated in MCL 691.1665 in which liability attaches are necessarily not equine activity because they involve human error not integral to engaging in an equine activity. Thus, the negligent act or omission referred to in MCL 691.1665(d) is negligent activity that is not within the gamut of inherently risky equine activity.

3. The plaintiff's claim under MCL 691.1665(d) fails as a matter of law because she did not plead a negligent act or omission involving something other than inherently risky equine activity.

4. The plaintiff's claim under MCL 691.1665(b) fails as a matter of law because she did not plead such a claim in her complaint or move to amend her complaint to so plead.

5. The plaintiff's claim that the defendant failed to post a warning sign required by MCL 691.1666 fails as a matter of law because she failed to plead such a claim in her complaint.

6. The plaintiff's claim that the EALA violates the Title-Object Clause of the Michigan Constitution, Const 1963, art 4, § 24, is without merit. The basis for this claim—that the EALA grants blanket immunity—lacks merit.

Affirmed.

NEGLIGENCE — EQUINE ACTIVITY LIABILITY ACT — NEGLIGENT ACTS OR OMISSIONS.

The Equine Activity Liability Act provides for nonliability by an equine activity sponsor, an equine professional, or another person for injury or death of a participant in an equine activity, or for property damage, resulting from an inherent risk of an equine activity; an exception to that grant of immunity concerning negligent acts or omissions applies only where liability is claimed for an act or omission involving something other than inherently risky equine activity (MCL 691.1663, 691.1665[d]).

*Otis M. Underwood, Jr.*, for the plaintiff.

*Morrissey, Bove & Ebbott* (by *Richard H. Ebbott*) for the defendant.

Before: FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM. In this personal injury action, we must decide whether § 5(d) of the Equine Activity Liability

Act (EALA), MCL 691.1661 *et seq.*, prescribes a general claim of ordinary negligence. The trial court granted summary disposition for defendant, ruling that § 3 of the EALA barred plaintiff's suit because her injuries arose from an "inherent risk of equine activity." We agree and affirm. In doing so, we hold that § 5(d) does not create a general negligence claim, but rather permits a negligence claim when it necessarily involves something other than inherently risky equine activity.

## I. BACKGROUND

Plaintiff and defendant were neighbors in Columbiaville, Michigan. On 8 to 10 occasions in 2003 or 2004, defendant invited plaintiff over to his property to exercise a few of the horses.[1] During these times, plaintiff would fetch the horse and groom and saddle it before riding it. On one occasion, plaintiff rode one of defendant's horses without defendant's permission. Typically, plaintiff would ride Slim or Motown, a "100 percent broke horse." Plaintiff had previously owned her own horse in the 1960s and a pony with her sister when she was little. Plaintiff does not exercise horses for anyone else.

In May 2004, plaintiff went to defendant's property with her sister, Theresa, and her son, Matthew. Allegedly, defendant invited plaintiff to his arena to ride Whiskey, a horse that he owned. Defendant knew that Whiskey was "green broke," meaning that he was not responsive to cues from the rider and only the most experienced riders should handle him. Defendant de-

---

[1] Defendant and his former wife were married in 1990. They owned and boarded four or five horses at their property. Before the marriage, defendant never had any dealings with horses, never had any training with horses, and never engaged in riding competitions. Defendant and his wife divorced in 2003. The horses were left with defendant.

nies that he invited plaintiff to his property and contends that plaintiff arrived at his property uninvited asking to ride Whiskey. When plaintiff arrived on defendant's property, she went to defendant's arena, where defendant was allegedly attempting to tie a lead rope onto Whiskey by enticing him with a bucket of feed. Defendant claims that once he had clipped the lead rope to Whiskey's halter, he asked plaintiff to hold the lead while he went to fetch a saddle and other tack. Defendant did not tie Whiskey to crossties before handing the lead rope to plaintiff.

When defendant returned with the saddle, plaintiff was still holding onto Whiskey's lead rope, as well as his halter, with her right hand. Plaintiff continued to hold onto Whiskey in this way while defendant attempted to saddle Whiskey. As defendant was doing so, Whiskey reared up on his hind legs and plaintiff, whose hand was caught in the halter, was pulled up into the air. Plaintiff fell to the ground, sustaining injuries to her shoulder and arm. As a result, plaintiff was not able to return to work for several months and her physical abilities have since been limited.

A lawsuit resulted from these events. Plaintiff's complaint claimed that defendant was "negligent" because he

> failed to properly secure the horse's head before saddling the horse; and, by failing in his duty to avoid alarming the horse, and by failing to lift the saddle up to the horse's back and instead made a high arching throw of the saddle which caused the horse to "spook," and then rear-up . . . .

During discovery, it became clear that defendant's version of events leading to plaintiff's injuries differed from plaintiff's version. In his deposition testimony, defendant denied that he ever brought Whiskey into the arena or that he went to fetch a saddle. According to

defendant, plaintiff asked to ride Whiskey, but he said she could not and they went out to the pasture to see Whiskey anyway. Defendant testified that he never surrendered control of Whiskey's lead rope, but that plaintiff reached up and grabbed Whiskey's halter, at which point the horse reared and plaintiff was pulled up into the air.

The deposition testimony of Theresa and Matthew, however, corroborated plaintiff's version of events. According to Theresa, defendant was "adamant about [plaintiff] riding that horse." Theresa further testified that defendant had plaintiff hold Whiskey's halter and lead rope while he went to get the saddle. When defendant attempted to "thr[o]w" the saddle on Whiskey, the horse reared and plaintiff was pulled into the air. Matthew stated that defendant asked plaintiff whether she wanted to ride Whiskey. Matthew testified that after catching Whiskey, defendant had plaintiff hold Whiskey's lead rope while he retrieved the saddle. Matthew stated that defendant then "threw" the saddle onto Whiskey and the horse reared, consequently injuring plaintiff.

Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that § 3 of the EALA, MCL 691.1663, barred plaintiff's claim. In response, plaintiff contended that she had produced evidence supporting her claim under two of the statutory exceptions to the immunity granted by the EALA: § 5(b) and (d), MCL 691.1665(b) and (d). The trial court agreed with defendant, ruling that plaintiff's claim was barred by the EALA. The trial court stated:

> The statute recognizes that an equine may behave in a way that will result in injury and that equines may have unpredictable reactions to diverse circumstances, precisely one of the guiding motivations of the limited liability for

equine professionals. Because there is no evidence indicating that Whiskey's behavior ... represented anything other than unpredictable action to a person or unfamiliar object[,] [p]ursuant to the statute, Plaintiff's argument in this case is without merit . . . .

This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Cole v Ladbroke Racing Michigan, Inc*, 241 Mich App 1, 6; 614 NW2d 169 (2000). Summary disposition under MCR 2.116(C)(10) is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When reviewing such a motion, we consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted, as well as any legitimate inferences, in the light most favorable to the nonmoving party. *Amerisure Ins Co v Plumb*, 282 Mich App 417, 423; 766 NW2d 878 (2009). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West, supra* at 183.

Our review is also de novo to the extent that we address questions of statutory interpretation. *Cole, supra* at 7. When interpreting a statute our primary purpose is to ascertain and give effect to the Legislature's intent. *Amburgey v Sauder*, 238 Mich App 228, 232; 605 NW2d 84 (1999). Our first clue to determining the Legislature's intent is the words used. *USAA Ins Co v Houston Gen Ins Co*, 220 Mich App 386, 389; 559 NW2d 98 (1996). "The Legislature is presumed to have meant the meaning of the language it plainly ex-

pressed." *City of Warren v Detroit*, 261 Mich App 165, 169; 680 NW2d 57 (2004). When looking to the language used, we should assume that every word has some meaning and should avoid a construction that would render a provision nugatory or surplusage. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992). If the language is clear and unambiguous, then judicial construction is neither necessary nor permitted. *People v Shakur*, 280 Mich App 203, 209; 760 NW2d 272 (2008). In addition, to the extent that the applicable statutes relate to the same subject matter or share a common purpose, we read them in *pari materia* and read them together as one law. *People v Harper*, 479 Mich 599, 621; 739 NW2d 523 (2007). "The object of the in *pari materia* rule is to effectuate the legislative purpose as found in harmonious statutes." *Walters v Leech*, 279 Mich App 707, 710; 761 NW2d 143 (2008). "If two statutes lend themselves to a construction that avoids conflict, that construction should control." *In re Project Cost & Special Assessment Roll for Chappel Dam*, 282 Mich App 142, 148; 762 NW2d 192 (2009).

## II. SUMMARY DISPOSITION

Plaintiff argues that the trial court's ruling was legally erroneous, that summary disposition should have been denied because plaintiff sufficiently pleaded a claim of negligence, and that defendant's failure to post warning signs should eliminate any limitation on his liability. We disagree.

### A. EQUINE ACTIVITY IMMUNITY

Plaintiff first contends that the trial court mischaracterized the EALA as granting "blanket immunity" to defendants defined in the act. In plaintiff's view, § 5 of the EALA, MCL 691.1665, permits certain types of

negligence claims, including a general claim of negligence, to be brought against defendants defined in the act. Although we agree that the EALA does not create blanket immunity, plaintiff's assertion that the trial court misinterpreted the EALA is factually inaccurate.

As this Court has previously noted, the purpose of the EALA is to "curb litigation [against the equine industry] and the correlative rising costs of liability insurance, and to stem the exodus of public stable operators from the [equine] industry." *Amburgey, supra* at 246. Consistently with this purpose, the "EALA proscribes liability only for injuries resulting from an 'inherent risk of equine activity' . . . ." *Id.* at 236. Specifically, § 3 of the EALA, MCL 691.1663, provides:

> Except as otherwise provided in section 5, an equine activity sponsor, an equine professional, or another person is not liable for an injury to or the death of a participant or property damage resulting from *an inherent risk of an equine activity*. Except as otherwise provided in section 5, a participant or participant's representative shall not make a claim for, or recover, civil damages from an equine activity sponsor, an equine professional, or another person for injury to or the death of the participant or property damage resulting from an *inherent risk of an equine activity*. [Emphasis added.]

The EALA defines "inherent risk of an equine activity" as "a danger or condition that is an integral part of an equine activity," such as an equine's propensity to behave in certain ways and react in unpredictable ways "to things." MCL 691.1662(f). However, § 5 provides certain exceptions to the limitation on liability created in § 3:

> Section 3 does not prevent or limit the liability of an equine activity sponsor, equine professional, or another person if the equine activity sponsor, equine professional, or other person does any of the following:

(a) Provides equipment or tack and knows or should know that the equipment or tack is faulty, and the equipment or tack is faulty to the extent that it is a proximate cause of the injury, death, or damage.

(b) Provides an equine and fails to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity and to determine the ability of the participant to safely manage the particular equine. A person shall not rely upon a participant's representations of his or her ability unless these representations are supported by reasonably sufficient detail.

(c) Owns, leases, rents, has authorized use of, or otherwise is in lawful possession and control of land or facilities on which the participant sustained injury because of a dangerous latent condition of the land or facilities that is known to the equine activity sponsor, equine professional, or other person and for which warning signs are not conspicuously posted.

(d) Commits a negligent act or omission that constitutes a proximate cause of the injury, death, or damage. [MCL 691.1665.]

Given these provisions, it is plainly obvious that the EALA does not create blanket immunity. See *Amburgey,* *supra* at 233 (construing § 5 as granting "immunity" to *qualifying* defendants). And, the trial court recognized this fact when it stated that the EALA merely "limits [the] liability of equine activity sponsors and equine professionals." Thus, given the trial court's acknowledgment that the EALA creates a limitation on liability, we cannot conclude that the trial court legally erred in the manner that plaintiff contends.

Plaintiff's more compelling argument is that § 5(d) permits a general negligence claim irrespective of EALA's limitation on liability. But again, we disagree. As already noted, § 5 delineates a list of exceptions to the qualified immunity granted to certain defendants under § 3. Section 5(d) provides that liability will attach if the defen-

dant "[c]ommits a negligent act or omission that constitutes a proximate cause of the injury, death, or damage." MCL 691.1665(d). Reading this subdivision in conjunction with subdivisions a, b, and c, as well as § 3 (which limits liability), leads us to the conclusion that the Legislature did not intend § 5(d) to prescribe a general or ordinary negligence claim. All of the conduct described in subdivisions a, b, and c of § 5 falls outside the definition of "inherent risk of equine activity," which activity is the only activity for which the EALA precludes liability. MCL 691.1663; see *Amburgey, supra* at 233. As previously noted, the phrase "inherent risk of equine activity" is defined as risks integral to equine activity. MCL 691.1662(f). "Equine activity" includes, but is not limited to, riding a horse belonging to another, boarding a horse and its normal daily care, as well as teaching or training activities. MCL 691.1662(c). The instances enumerated in § 5 in which liability attaches are necessarily outside this definition because they involve human error *not* integral to engaging in an equine activity, such as failure to inspect tack, MCL 691.1665(a), failure to inquire into a participant's level of ability to manage the horse, MCL 691.1665(b), and failure to warn of dangerous latent conditions in the land, MCL 691.1665(c). Reading the EALA as a whole in *pari materia*, it only makes sense if § 5(d) also includes other negligent activity that is not within the gamut of "inherent[ly] risk[y] . . . equine activity." MCL 691.1662(f). To do otherwise, as plaintiff suggests, would be to permit a general negligence claim under § 5(d), which would consequently render § 3 nugatory, as it would destroy the limited liability for qualifying defendants created under that section. This result would completely eviscerate the purpose for which the Legislature enacted the EALA. We decline to adopt such an interpretation. *Altman, supra* at 635. Accordingly, we hold that § 5(d) does not create a general negligence claim, but

rather permits a negligence claim to arise that involves something other than "inherent[ly] risk[y] . . . equine activity." MCL 691.1662(f).

### B. NEGLIGENCE UNDER THE EALA

Plaintiff next argues that she sufficiently supported a claim of negligence pursuant to the EALA. Plaintiff asserts that defendant knew that Whiskey was not suitable for a social guest to ride and that Whiskey presented a high risk of harm, but permitted plaintiff to engage with the horse anyway and, as a result, plaintiff was injured. Plaintiff contends that defendant is not immune from liability on the basis of these facts and § 5(b) and (d). We cannot agree that summary disposition was improper. In light of our discussion interpreting the meaning of § 5(d), we first address plaintiff's claim under that provision.

### i. MCL 691.1665(d)

As we have already indicated, liability will attach under § 5(d) if the defendant "[c]ommits a negligent act or omission that constitutes a proximate cause of the injury, death, or damage" only if that act or omission involves something other than inherently risky equine activity. MCL 691.1665(d). We note at the outset that plaintiff has pleaded nothing more than an ordinary negligence claim. In order to state a claim that avoids the immunity provision of the EALA, a plaintiff must allege specific facts in his or her complaint under one of the exceptions enumerated under § 5. Plaintiff's complaint, however, makes no specific mention of § 5(d) and only alleges that defendant was negligent. Plaintiff's claim under § 5(d) fails as a matter of law on this basis. See MCR 2.116(C)(8).

Assuming that plaintiff had sufficiently pleaded a § 5(d) negligence claim under the EALA, it is our opinion after a review of the evidence that plaintiff has failed to establish that her injury resulted from activity beyond that of engaging in an inherently risky equine activity as that section requires. See MCL 691.1663; MCL 691.1665. As already stated, the EALA defines "inherent risk of an equine activity" as "a danger or condition that is an integral part of an equine activity," such as a propensity to behave in certain ways and an equine's unpredictable reaction "to things." MCL 691.1662(f). To "engage in an equine activity" under the EALA means

> *riding*, training, driving, breeding, being a passenger upon, or providing or assisting in veterinary treatment of an equine, *whether mounted or unmounted*. Engage in an equine activity includes visiting, touring, or utilizing an equine facility as part of an organized event or activity including the breeding of equines, or assisting a participant or show management. Engage in equine activity does not include spectating at an equine activity, unless the spectator places himself or herself in an unauthorized area and in immediate proximity to the equine activity. [MCL 691.1662(a) (emphasis added).]

And, "equine activity" means, but is not limited to:

> (*ii*) Equine training or teaching activities.
>
> (*iii*) Boarding equines, including their normal daily care.
>
> (*v*) Riding . . . an equine belonging to another . . . . [MCL 691.1662(c).]

Viewing the evidence in the light most favorable to plaintiff, it is plain that plaintiff was engaged in inherently risky equine activity. Defendant invited plaintiff to his property so that she could ride Whiskey. Although plaintiff did not mount or ride Whiskey, she held Whiskey's halter and lead rope while defendant at-

tempted to saddle the horse. When defendant hoisted the saddle into the air, the horse got spooked and reared up on its hind legs, resulting in an injury to plaintiff. This is exactly the type of risk that is integral to any equine activity. MCL 691.1662(f). In other words, Whiskey had an "unpredictabl[e] . . . reaction" to defendant's attempt to saddle him, MCL 691.1662(f)(*ii*), while plaintiff was engaging in an equine activity, MCL 691.1662(a) and (c). Plaintiff has failed to support a negligence claim that meets the requirements of § 5(d), i.e., some type of negligence involving something other than "inherent[ly] risk[y] . . . equine activity." MCL 691.1662(f).

### ii. MCL 691.1665(b)

Plaintiff also argues that she sufficiently supported a claim for negligence pursuant to § 5(b), MCL 691.1665(b), which permits liability if a person

> [p]rovides an equine and fails to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity and to determine the ability of the participant to safely manage the particular equine. A person shall not rely upon a participant's representations of his or her ability unless these representations are supported by reasonably sufficient detail.

Plaintiff's contention is without merit.

We first note that plaintiff never pleaded in her complaint that defendant should be liable under this provision. Nor did plaintiff ever move to amend her complaint to state a theory of liability under § 5(b). Again, on this basis alone, plaintiff's claim fails as a matter of law. See MCR 2.116(C)(8). Once more, we stress that in order to state a claim that avoids the immunity provision of the EALA, a plaintiff must allege specific facts in his or her complaint under one of the

exceptions enumerated under § 5. This mandate is imperative. Plaintiff's failure to do so in this matter is fatal to her claim.

Even if we were to consider plaintiff's claim, it would nonetheless be unsuccessful. The only evidence plaintiff produced relevant to this provision is her deposition testimony. In her deposition, plaintiff testified that on numerous occasions she requested that she be allowed to ride Whiskey. However, defendant refused permission unless he was present. This evidence tends to show that defendant was aware of both Whiskey's and plaintiff's abilities. Plaintiff failed to plead or otherwise establish through discovery how this was either unreasonable or imprudent, as required by § 5(b).

Plaintiff also attempts to rely on a letter from Timothy Wright in support of her § 5(b) claim. We cannot consider this so-called "expert" testimony. Mr. Wright was never qualified as an expert and he was never deposed. See MRE 702. The sole attempt to qualify him as an expert is a mere statement in a letter, which is not notarized and is not an affidavit, that he has a "lifelong affiliation with the horse industry." See id.; MCR 2.116(G)(6). Moreover, the letter is not accompanied by a curriculum vitae, which could have shed further light on his qualifications to offer expert testimony. Nothing in the contents of the letter constitute anything more than conclusory allegations, which are insufficient to create an issue of material fact to avoid summary disposition. *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993).

Plaintiff's failure to produce supportive evidence through discovery in support of her claims under § 5(b) and (d) is fatal to her claim. MCR 2.116(C)(10). Accordingly, we conclude that the trial court correctly granted summary disposition for defendant because plaintiff's

injury resulted from an inherent risk of an equine activity and plaintiff did not prove otherwise.

C. WARNING SIGNS

Plaintiff further asserts that the trial court erred by failing to consider her argument that summary disposition is precluded because defendant did not post warning signs, as required under the EALA. According to plaintiff, because defendant failed to post signs consistent with § 6, MCL 691.1666, he should not be able to avail himself of the limitations on his liability and the jury should have been instructed on plaintiff's theory of liability based on § 5(b) and (d).[2] We disagree.

Section 6 provides:

(1) An equine professional shall post and maintain signs that contain the warning notice set forth in subsection (3). The signs shall be placed in a clearly visible location in close proximity to the equine activity. The warning notice shall appear on the sign in conspicuous letters no less than 1 inch in height.

(2) A written contract entered into by an equine professional for providing professional services, instruction, or rental of equipment, tack, or an equine to a participant, whether or not the contract involves an equine activity on or off the location or site of the equine professional's business, shall contain in clearly readable print the warning notice set forth in subsection (3).

---

[2] Plaintiff did not plead a violation of § 6 in her complaint, but raised the issue in her answer to defendant's motion for summary disposition. The trial court, however, did not consider the argument. As such, plaintiff's claim is not properly preserved. However, "where the lower court record provides the necessary facts, appellate consideration of an issue raised before, but not decided by, the trial court is not precluded." *Hines v Volkswagen of America, Inc,* 265 Mich App 432, 443-444; 695 NW2d 84 (2005). We consider plaintiff's argument because the facts necessary for its resolution are apparent on the record.

(3) A sign or contract described in this section shall contain substantially the following warning notice:

WARNING

Under the Michigan equine activity liability act, an equine professional is not liable for an injury to or the death of a participant in an equine activity resulting from an inherent risk of the equine activity. [MCL 691.1666.]

Again, because plaintiff failed to plead a violation of this provision in her complaint, her claim fails as a matter of law. See MCR 2.116(C)(8). But even if we consider her argument, it is plain that § 6 does not apply to defendant. Under § 6(1), an "equine professional" is required to post a warning sign for visitors. An "equine professional" is defined in the EALA as a person engaged in an activity for compensation. MCL 691.1662(e). Our review of the record reveals that defendant was not engaged in an equine activity for compensation and he is not an equine professional. The requirement to post a warning sign does not apply to him. We note in passing that even if this provision did apply to defendant, it would in no way eliminate the restrictions on liability set forth in § 3. Plaintiff's argument suggesting otherwise reads additional requirements into the statute that the Legislature did not include. *In re Wayne Co Prosecutor*, 232 Mich App 482, 486; 591 NW2d 359 (1998).

IV. CONSTITUTIONAL CLAIM

Lastly, plaintiff argues for the first time on appeal that the EALA violates the Title-Object Clause of the Michigan Constitution, Const 1963, art 4, § 24, which states, in part, "No law shall embrace more than one object, which shall be expressed in its title." Plaintiff's argument depends on her contention that the EALA

functions to eliminate all liability, or grant blanket immunity to defendants, which is not encompassed in the act's title. The result, plaintiff contends, is a violation of the clause because the contents of the act exceed its title. On the contrary, we have already determined that the EALA does not grant blanket immunity, as discussed above. Accordingly, the assertions upon which plaintiff bases her argument are inaccurate and there is no merit to her argument. Thus, we decline to grant relief on this basis.

Affirmed.