# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 13, 2010

139438

TRINA LEE BEATTIE,
              Plaintiff-Appellant,

v

MARK P. MICKALICH,
              Defendant-Appellee.
_____

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 139438
COA: 284130
Lapeer CC: 06-037681-NO

On May 11, 2010, the Court heard oral argument on the application for leave to appeal the June 25, 2009 judgment of the Court of Appeals. On order of the Court, the application is again considered. MCR 7.302(H)(1). In lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals and REMAND this case to the Lapeer Circuit Court for further proceedings consistent with this order. A plaintiff is not required to plead a claim in avoidance of the limitations on liability provided in the Equine Activity Liability Act (EALA), MCL 691.1661 *et seq.* Cf. *Mack v Detroit*, 467 Mich 186, 198 (2002). In addition, although EALA abolished strict liability for horse owners, *Amburgey v Sauder,* 238 Mich App 228, 245 (1999), it did not abolish negligence actions against horse owners. Indeed, EALA expressly states that "[s]ection 3 does not prevent or limit the liability . . . if the . . . person . . . [c]ommits a negligent act or omission that constitutes a proximate cause of the injury." MCL 691.1665. Finally, given that the plaintiff offered documentary evidence to support her argument that the defendant was negligent and the content or substance of such documentary evidence would be admissible at trial, the lower courts erred in granting the defendant's motion for summary disposition. MCR 2.116(G)(6).

MARKMAN, J. (*concurring*).

I concur in this Court's decision to reverse the judgment of the Court of Appeals, and write separately only to respond to the dissent. Both the Court of Appeals and the dissent conclude that the Equine Activity Liability Act (EALA), MCL 691.1661 *et seq.,* only permits a negligence claim when it involves something other than inherently risky equine activity. I respectfully disagree.

Section 3 of the EALA (MCL 691.1663) provides:

> *Except as otherwise provided in section 5*, an equine activity sponsor, an equine professional, or another person is not liable for an injury to or the death of a participant or property damage resulting from an inherent risk of an equine activity. *Except as otherwise provided in section 5*, a participant or participant's representative shall not make a claim for, or recover, civil damages from an equine activity sponsor, an equine professional, or another person for injury to or the death of the participant or property damage resulting from an inherent risk of an equine activity. [Emphasis added.]

Section 5 of the EALA (MCL 691.1665) provides:

> Section 3 does not prevent or limit the liability of an equine activity sponsor, equine professional, or another person if the equine activity sponsor, equine professional, or other person does any of the following:
>
> * * *
>
> (d) Commits a negligent act or omission that constitutes a proximate cause of the injury, death, or damage.

It is uncontested that plaintiff was a "participant" "engage[d] in an equine activity" when she was injured. The issue is whether plaintiff's claim fits within the "negligent act or omission that is a proximate cause of the injury" exception of EALA. The Court of Appeals correctly held that EALA does not provide blanket immunity to a horse owner. However, I believe that it read the immunity that EALA does provide too broadly.

Prior to the enactment of EALA, common-law strict liability would have applied to the owner of a "green broke" horse. In *Trager v Thor,* 445 Mich 95, 99 (1994), this Court recognized that "[t]here has long existed at common law a cause of action against possessors of certain domestic animals for harm caused by those animals, regardless of fault." More specifically, "[s]trict liability attaches for harm done by a domestic animal where three elements are present: (1) one is the possessor of the animal; (2) one has scienter of the animal's abnormal dangerous propensities; and (3) the harm results from the dangerous propensity that was known or should have been known." *Id.* Here, defendant admitted that he knew that the horse was "green broke," and thus that only the most experienced riders should handle the horse. That is, defendant had knowledge of the horse's abnormally dangerous propensities. Indeed, that is why, according to his own testimony, he refused to let plaintiff ride the horse. Therefore, if, as plaintiff alleges, defendant did give plaintiff permission to ride the horse, and did instruct plaintiff to hold onto the lead rope while he placed the saddle on the horse, defendant under the common law would have been strictly liable for plaintiff's injuries. Because EALA abolished strict liability for horse owners, *Amburgey v Sauder,* 238 Mich App 228, 245 (1999), defendant is not strictly liable for plaintiff's injuries.

However, EALA did not abolish negligence actions against horse owners. Indeed, EALA expressly states that "[s]ection 3 does not prevent or limit the liability . . . if the . . . person . . . [c]ommits a negligent act or omission that constitutes a proximate cause of the injury." MCL 691.1665. The Court of Appeals reasoned, and the dissent agrees, that allowing a negligence action for injuries sustained while engaged in equine activity would "render § 3 nugatory, as it would destroy the limited liability for qualifying defendants created under that section. However, this result would completely eviscerate the purpose for which the Legislature enacted EALA." *Beattie v Mickalich,* 284 Mich App 564, 573 (2009). The Court of Appeals and the dissent ignore that at common law horse owners were strictly liable. In light of this strict liability, reading § 5 of EALA as permitting negligence actions does not render § 3 nugatory. Instead, it signifies that horse owners are no longer subject to strict liability. This interpretation is consistent with *Gardner v Simon,* 445 F Supp 2d 786 (WD Mich, 2006), in which the federal district court held that EALA did not immunize defendant from an action in which plaintiff alleged that defendant had been negligent in failing to warn him about the dangerous propensities of the horse and of the fact that the horse had previously thrown three other riders. Moreover, § 3 may also signify that horse owners are no longer liable under the doctrine of respondeat superior, because § 5 states that only those persons who "[c]ommit[] a negligent act or omission" are liable.

Indeed, it is the Court of Appeals, and the dissent's, interpretation of EALA that renders aspects of the statute nugatory. Specifically, their interpretation would render § 5(d) nugatory. The Court of Appeals held that § 5(d) does not permit general negligence claims, but rather permits only those negligence claims that involve something other than "inherent[ly] risk[y] . . . equine activity." *Beattie,* 284 Mich App at 573-574. However, § 3 *already* limits its immunization to injuries resulting from "inherent[ly] risk[y] . . . equine activity." Given that § 3 already limits its immunization to injuries resulting from "inherent[ly] risk[y] . . . equine activity," it would have been completely unnecessary for the Legislature to indicate in § 5 that injuries resulting from something *other* than "inherent[ly] risk[y] . . . equine activity" are exempt from this immunization, i.e., to exempt something from immunization that was not even subject to immunization in the first place.

Contrary to the dissent's contention, nowhere in this statement do I suggest that the Legislature's *only* goal was to eliminate strict liability. Given that the Legislature enacted a general limitation on liability and *four* exceptions to this limitation, eliminating strict liability was obviously not the Legislature's *only* goal. The dissent also criticizes me for violating the principle of *ejusdem generis* by failing to read the negligence exception in accord with the other three exceptions. Again, I respectfully disagree, and believe that our disagreement stems from the fact that I also disagree with the dissent's premise that the other three exceptions pertain to risks that are "above and *beyond*" the "inherent risk[s] of an equine activity." Instead, I believe that faulty tack, the rider's ability not matching the horse's personality, and dangerous latent conditions of the land

are all "inherent risk[s] *of* an equine activity." Again, if they were not, there would be no need for the Legislature to exempt them from the general limitation on liability because such limitation only applies in the first place to injuries "resulting from an inherent risk of an equine activity." MCL 691.1663.

For these reasons, I concur in this Court's order reversing the Court of Appeals and holding that EALA does not bar recovery for negligent acts of horse owners. Although the statutory provisions at issue are by no means a model of clarity, and I do understand the contrary arguments of the dissent, I respectfully believe that the most reasonable interpretation of this statute is that which is presented in this Court's order.

KELLY, C.J., joins the statement of MARKMAN, J.

YOUNG, J. (*concurring in part and dissenting in part*).

I dissent from the majority's order reversing the Court of Appeals' judgment. Instead, I would affirm that portion of the Court of Appeals judgment affirming the dismissal of plaintiff's claims based on the Equine Activity Liability Act (EALA), MCL 691.1661 et seq.[1]

MCL 691.1663 limits the liability of "an equine activity sponsor, an equine professional, or another person" (a "horse owner") when the alleged injury or damage "result[s] from an inherent risk of an equine activity."[2] This limitation on liability applies "[e]xcept as otherwise provided in [MCL 691.1665]." MCL 691.1665, in turn, provides exceptions to the EALA's limitation on liability when the horse owner "does" an enumerated item:

> (a) Provides equipment or tack and knows or should know that the equipment or tack is faulty, and the equipment or tack is faulty to the extent that it is a proximate cause of the injury, death, or damage.
>
> (b) Provides an equine and fails to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity and to determine the ability of the participant to safely manage the particular equine. . . .

---

[1] I concur with the majority's assessment that the Court of Appeals incorrectly shifted the burden onto plaintiff to state her claims in avoidance of the EALA limitation on liability.

[2] "An inherent risk of an equine activity" is defined in MCL 691.1662(f) as "a danger or condition that is an integral part of an equine activity . . . ." This definition is consistent with the dictionary definition of the term "inherent": "Existing as an essential constituent or characteristic; intrinsic." The American Heritage Dictionary of the English Language (New College Edition, 1976), p 676 (emphasis added).

(c) Owns, leases, rents, has authorized use of, or otherwise is in lawful possession and control of land or facilities on which the participant sustained injury because of a dangerous latent condition of the land or facilities that is known to the [horse owner] and for which warning signs are not conspicuously posted.

(d) Commits a negligent act or omission that constitutes a proximate cause of the injury, death, or damage.[3]

I agree with the Court of Appeals that MCL 691.1665(d) cannot be construed as broadly allowing general negligence claims without completely eviscerating the entire concept of limited liability under the EALA. MCL 691.1665 must be read in conjunction with MCL 691.1663 to give effect to the act as a whole.[4] Giving effect to both provisions, the Court of Appeals correctly interpreted the exception of MCL 691.1665(d) as involving "human error" "not within the gamut of 'inherent[ly] risk[y] . . . equine activity.'"[5]

This interpretation is further bolstered by reading MCL 691.1665(d) with the other listed exceptions in the statute. "Under the statutory construction doctrine known as *ejusdem generis*, where a general term follows a series of specific terms, the general term is interpreted 'to include only things of the same kind, class, character, or nature as those specifically enumerated.'"[6]

MCL 691.1665 provides such "a general term follow[ing] a series of specific terms." Subsections (a) – (c) provide specific exceptions in specific situations: where the horse owner has provided faulty tack, failed to match the rider's ability to the horse's personality, or failed to warn of a known latent dangerous condition on the land. Each of these exceptions obviously involves an equine activity and a danger that could potentially arise in the course of that activity. However, each also involves an affirmative act or omission on the part of the horse owner, above and beyond the "inherent" or essential risks of an equine activity, which makes the equine activity even more dangerous. Therefore, we must interpret the more general negligence exception of subsection (d) "to include only things of the same kind, class, character, or nature" as the more specific, preceding subsections. Accordingly, a negligence claim pursuant to subsection (d) must

---

[3] Emphasis added.

[4] *Apsey v Memorial Hosp*, 477 Mich 120, 131 (2007) ("[A] reviewing court should not interpret a statute in such a manner as to render it nugatory. A statute is rendered nugatory when an interpretation fails to give it meaning or effect.")(citation omitted).

[5] *Beattie v Mickalich*, 284 Mich App 564, 573 (2009).

[6] *Neal v Wilkes*, 470 Mich 661, 669 (2004) (MARKMAN, J.), quoting *Huggett v Dep't of Natural Resources*, 464 Mich 711, 718-719 (2001).

also involve a negligent act or omission beyond the "inherent" risk of the equine activity, making the activity even more dangerous.

Moreover, the majority order, as well as Justice MARKMAN's concurring statement, base their interpretation of the negligence exception to the EALA on an overly narrow and faulty linchpin: that the exception was intended simply to eliminate strict liability for horse owners. However, this interpretation fails to consider that, if the Legislature's goal were merely to eliminate strict liability, it could have accomplished that goal in a much simpler and more direct fashion. Instead, the Legislature drafted a complex limitation on liability for injuries arising from an inherent risk of an equine activity and accompanied that limitation with numerous specific exceptions. Those exceptions must be read according to the canon of construction ejusdem generis in order to give effect to the statute as a whole. But the majority's and Justice MARKMAN's narrow focus on the legislative purpose of abolishing strict liability leads to an interpretation of MCL 691.1665(d) that violates this basic canon of statutory construction.

Here, plaintiff was injured while assisting defendant to saddle a horse. Saddling a horse in preparation of riding is clearly an equine activity and a horse's unexpected and negative reaction to being saddled is clearly an inherent risk of such activity.[7] Further, both plaintiff and defendant were aware of the particular horse's personality and of plaintiff's level of experience with horses. Specifically, defendant described the horse as "green broke" and plaintiff admitted her knowledge that the horse was "fast" and could be ridden only with defendant's supervision. The deposition testimony and the expert letter provided by plaintiff all indicate that this horse may have reacted negatively to being saddled no matter what method defendant used to effectuate the saddling. Accordingly, plaintiff cannot establish that defendant committed human error above and beyond the inherent or essential risk of this equine activity such that defendant increased the danger involved in the activity.[8] As a result, plaintiff has not created a genuine issue

---

[7] See MCL 691.1662(f)(ii) (defining "inherent risk of an equine activity" as including "[t]he unpredictability of an equine's reaction to things such as sounds, sudden movements, and people, other animals, or unfamiliar objects").

[8] In this regard, I would note that the current case is factually distinguishable from *Gardner v Simon*, 445 F Supp 2d 786 (WD Mich, 2006), a federal case applying the Michigan EALA. The plaintiff in Gardner had no prior experience with the particular horse and the defendant failed to warn the plaintiff about the horse's known dangerous propensities. The defendant's negligent failure to warn amounted to human error that made the equine activity even more dangerous to the plaintiff. In the current case, plaintiff was aware that the horse was not well trained but wanted to ride the horse anyway. Given her preexisting knowledge of the heightened danger involved with the particular horse, plaintiff cannot establish that defendant's conduct rendered the activity more dangerous.

of material fact that her claim falls within the negligence exception to the EALA limitation on liability.[9]   For this reason, I would affirm the Court of Appeals judgment affirming the trial court's dismissal of plaintiff's claims.

WEAVER and CORRIGAN, JJ., join the statement of YOUNG, J.

---

[9] As plaintiff failed to create a genuine issue of material fact, I believe the Court of Appeals should not have commented upon the admissibility of plaintiff's proffered expert opinion letter.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 13, 2010

0712

Clerk