*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELE MOLNAR,

        Plaintiff-Appellant,

v

TENACITY FARM, INC., doing business as
STONEHAVEN FARM EQUESTRIAN, INC., and
CATHY ROHRS,

        Defendants-Appellees.

FOR PUBLICATION
February 2, 2023
9:00 a.m.

No. 359740
Monroe Circuit Court
LC No. 20-143037-NO

Before: YATES, P.J., and JANSEN and SERVITTO, JJ.

YATES, P.J.

      If it wishes, our Legislature may supplant the common law with a statutory scheme. In this case, we must decide whether plaintiff's common-law negligence claims are viable in light of the Equine Activity Liability Act (EALA), MCL 691.1661 *et seq*. In addition, we must determine the extent to which plaintiff, Michele Molnar, may recover for her injuries that resulted from "equine activity" on the property of defendant Tenacity Farm, Inc., doing business as Stonehaven Farm Equestrian, Inc. ("Stonehaven"), under the statutory theories of liability defined in the EALA. The trial court granted summary disposition under MCR 2.116(C)(10) to Stonehaven and its employee, Cathy Rohrs, on the negligence claims as well as plaintiff's statutory claims for willful or wanton conduct under the EALA, MCL 691.1665(d). Because the trial court correctly applied the EALA in resolving defendants' motion for summary disposition, we shall affirm.

## I. FACTUAL BACKGROUND

      On June 13, 2018, plaintiff began taking horseback-riding lessons with defendant Rohrs at defendant Stonehaven's facilities. At her first lesson, plaintiff rode a horse named Casey and, after that lesson, plaintiff was involved in tacking and grooming Casey and then returning Casey to the pasture. Plaintiff seemed comfortable with Casey and had no issues riding or handling that horse. When plaintiff arrived for her second lesson on June 21, 2018, Casey was still in the pasture with several other horses, so Rohrs told plaintiff to retrieve Casey from the pasture and bring Casey to the barn, where plaintiff could groom and tack Casey and then ride him. Plaintiff advised Rohrs

-1-

that she had never before retrieved a horse from a pasture. According to plaintiff, Rohrs appeared distracted because she was about to begin overseeing a children's camp that morning. Rohrs took plaintiff to the pasture, pointed out Casey among the other horses in the pasture, and told plaintiff to hook the lead rope onto Casey. According to plaintiff, Rohrs then walked away after assuring plaintiff that she would be fine.

Plaintiff led Casey out of the pasture, but she saw that other horses had surrounded Rohrs, who was far away from plaintiff. Rohrs appeared to be struggling and did not have control. Rohrs instructed plaintiff to wait, and Rohrs opened a gate for plaintiff to enter another area while Rohrs had another horse, Cosmo, on a lead. Rohrs yelled for plaintiff to run through the gate with Casey. Plaintiff was able to get Casey through the gate, but plaintiff did not close the gate behind her after she led Casey through it. Cosmo chased after plaintiff and Casey through the open gate and kicked plaintiff in the leg, breaking plaintiff's leg and knocking her to the ground.

According to Rohrs, she believed plaintiff had enough experience with horses to retrieve a horse from the pasture, which was something Stonehaven taught its students as part of the lessons. Rohrs was there to assist plaintiff. There were four horses in the pasture, and plaintiff was able to lead Casey without difficulty. When plaintiff started to walk toward the gate, Rohrs noticed that Cosmo was walking toward them, so Rohrs clipped a lead line onto Cosmo's halter and attempted to prevent Cosmo from interfering with the lesson. Rohrs followed plaintiff as plaintiff led Casey, and Rohrs instructed plaintiff to go to a gate that led to a smaller pasture. Plaintiff opened the gate and took Casey into the smaller pasture, but plaintiff left the gate open. When Rohrs walked over to close the gate, Cosmo pulled the lead line out of Rohrs's hand and went through the open gate. After Rohrs went to close the gate, she heard plaintiff say that she had been kicked. Rohrs assisted plaintiff, but Rohrs neither saw nor heard what had happened, other than hearing plaintiff state that she had been kicked.

On December 30, 2019, plaintiff filed a complaint against Stonehaven setting forth claims for negligence and willful and wanton conduct. Plaintiff's first amended complaint, which added Rohrs as a defendant, repeated the original claims of negligence and willful and wanton conduct against Stonehaven and presented claims for negligence and willful and wanton conduct against Rohrs. On October 1, 2021, both defendants moved for summary disposition on all claims under MCR 2.116(C)(7), (8), and (10) "on the basis of a waiver/release, statutory immunity, and lack of a genuine issue of material fact." On November 12, 2021, the trial court heard oral arguments on the motion and granted relief to both defendants in a ruling from the bench that was memorialized in a written order. Plaintiff thereafter moved for reconsideration, but the trial court denied relief to plaintiff in an order entered on December 8, 2021. Plaintiff then filed this appeal contesting the trial court's summary disposition award.

## II. LEGAL ANALYSIS

We review de novo the trial court's decision on defendants' summary disposition motion. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Defendants' motion cited MCR 2.116(C)(7), (8), and (10), and the trial court stated that it granted defendants' motion under all three subrules. On appeal, however, we shall focus on MCR 2.116(C)(10) as the

basis for summary disposition.[1]  A motion under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil*, 504 Mich at 160.  In resolving such a motion, "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id.*  The motion "may only be granted when there is no genuine issue of material fact." *Id.*  Such an issue "exists when the record leaves open an issue upon which reasonable minds might differ." *Id.* (quotation marks omitted).  With these standards in mind, we shall initially address plaintiff's claims for negligence, and then we shall turn to the claims for willful or wanton conduct under the EALA, MCL 691.1665(d).

## A.  PLAINTIFF'S NEGLIGENCE CLAIMS

Plaintiff contends that Stonehaven and its employee, Cathy Rohrs, were negligent in telling plaintiff to retrieve Casey from a pasture and move Casey to an adjoining pasture in a manner that exposed plaintiff to the risk of being injured by other horses (such as Cosmo) that were with Casey. Defendants respond that plaintiff's common-law negligence claims are barred by the EALA, which includes the following preclusion of common-law claims in MCL 691.1663:

> Except as otherwise provided in section 5 [i.e., MCL 691.1665], an equine activity sponsor, an equine professional, or another person is not liable for an injury to or the death of a participant . . . resulting from an inherent risk of an equine activity. Except as otherwise provided in section 5 [i.e., MCL 691.1665], a participant or participant's representative shall not make a claim for, or recover, civil damages from an equine activity sponsor, an equine professional, or another person for injury to or the death of the participant . . . resulting from an inherent risk of an equine activity.

Under this "clear and unambiguous language of the EALA, if a participant's injuries result from an inherent risk of an equine activity, the participant may not make a claim for damages against an equine professional" or an "equine activity sponsor." *Amburgey v Sauder*, 238 Mich App 228, 233; 605 NW2d 84 (1999).  Similarly, "the equine professional" and the "equine activity sponsor" are "free from the 'penalty' or 'burden' of claims for damages." *Id.*  As a result, "the Legislature intended to grant immunity to qualifying defendants." *Id.*

The definitions in the EALA fit defendants Stonehaven and Rohrs like a well-worn saddle. An "equine activity" includes "[e]quine training or teaching activities." MCL 691.1662(c)(*ii*). An "equine activity sponsor" includes a "corporation . . . that . . . provides the facilities for an equine activity," see MCL 691.1662(d), just as Stonehaven did in this case.  An "equine professional" is

---

[1] The defendants' request for relief under MCR 2.116(C)(7) flowed from a waiver plaintiff signed before her first riding lesson.  Because we do not find that waiver argument persuasive, we shall focus upon defendants' contentions that the EALA foreclosed plaintiff's common-law claims for negligence and that plaintiff failed to support her statutory claims under the EALA.  We recognize that the EALA contains language in MCL 691.1663 that could be treated as an immunity provision, which could justify summary disposition under MCR 2.116(C)(7), but the defendants have framed their argument under MCL 691.1663 as a fatal defect in plaintiff's negligence claims, so we shall analyze the award of summary disposition on the negligence claims under MCR 2.116(C)(10).

a "person engaged in . . . [i]nstructing a participant in an equine activity[,]" MCL 691.1662(e)(*i*), just as Cathy Rohrs did in this case. And a "participant" includes "an individual, whether amateur or professional, engaged in an equine activity," MCL 691.1662(g), just as plaintiff was in this case. *Amburgey*, 238 Mich App at 234-235 (broadly defining "participant" under EALA). Indeed, even when—as in this case—the horse that caused plaintiff's injuries was not the horse with which the plaintiff interacted in "equine activity," the immunity afforded by the EALA applies. *Id.* at 235-236. "The Legislature broadly defined engagement in an equine activity . . . obviously recognizing and anticipating that in an environment involving equines, potential liability could arise out of innumerable situations, including instances where, as in the present case, the participant, before the incident or accident, had no direct or meaningful interaction with the particular equine that caused the injury" to the plaintiff. *Id.* at 236. That observation perfectly describes the injury to plaintiff caused by Cosmo, as opposed to Casey, thereby confirming that the trial court correctly awarded summary disposition under MCR 2.116(C)(10) to defendants on plaintiff's common-law negligence claims.

## B. PLAINTIFF'S CLAIMS FOR WILLFUL OR WANTON CONDUCT

In addition to the negligence claims, plaintiff's first amended complaint presented claims against both defendants for willful or wanton conduct. Unlike the negligence claims, which the EALA barred, the claims for willful or wanton conduct are authorized under the EALA. Pursuant to MCL 691.1665(d), the sweeping immunity afforded by MCL 691.1663 does not apply if the defendant "is an equine activity sponsor or equine professional" who "commits an act or omission that constitutes a willful or wanton disregard for the safety of the participant" and "is a proximate cause of the injury, death, or damage." Because plaintiff's statutory claims based upon that theory do not fall prey to any immunity defense, those claims must be analyzed on their merits.[2] The trial court resolved them on summary disposition under MCR 2.116(C)(10), reasoning that no genuine issue of material fact required a trial of those claims. Accordingly, plaintiff argues on appeal that there remain genuine issues of material fact that made summary disposition inappropriate.

We must begin our analysis by establishing the standard that the plaintiff must satisfy. The statutory definition of the claim contemplates conduct by the defendants "that constitutes a willful or wanton disregard for the safety of the participant[.]"[3] See MCL 691.1665(d). Under Michigan, law, "[t]he term 'wilful' requires a finding of an actual intent to harm, while the term 'wanton' is an intent inferred from reckless conduct." *Jennings v Southwood*, 446 Mich 125, 141; 521 NW2d 230 (1994). The trial court awarded summary disposition under MCR 2.116(C)(10) to defendants

---

[2] The statutory claims must be distinguished from common-law claims for gross negligence, which ordinarily cannot be waived, *Xu v Gay*, 257 Mich App 263, 269; 668 NW2d 166 (2003), but which may be barred by the immunity conferred under the EALA. See MCL 691.1663. Gross negligence requires " 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.' " *Xu*, 257 Mich App at 269.

[3] That heightened standard applies only to statutory claims against "an equine activity sponsor or equine professional[.]" See MCL 691.1665(d). In contrast, if the defendant is neither an "equine activity sponsor" nor an "equine professional," liability under the EALA, MCL 691.1665(e), can rest upon "a negligent act or omission that constitutes a proximate cause of the injury[.]"

-4-

on the statutory claims by finding no genuine issue of material fact with regard to either willful or wanton conduct. We agree with the trial court's analysis.

The evidence, when viewed in the light most favorable to plaintiff, reveals that defendant Cathy Rohrs instructed plaintiff to go into the pasture to retrieve Casey and then lead Casey into a smaller pasture for the riding lesson. Plaintiff had had no difficulties with Casey during the first lesson, and plaintiff encountered no problems retrieving Casey and leading Casey into the smaller pasture on the date of the second lesson. Problems arose only because neither plaintiff nor Rohrs closed the gate between the pastures, which allowed Cosmo to go into the smaller pasture and kick plaintiff. Those facts most assuredly do not give rise to a genuine issue of material fact with regard to "willful" conduct by the defendants because no rational juror could find that Rohrs "intended to harm" plaintiff. See *Jennings*, 446 Mich at 146. Similarly, those facts cannot support a finding of "wanton" conduct because no rational juror could find Rohrs responsible for conduct "reckless" enough to infer an intent to harm plaintiff. See *id.* at 141. The evidence presented to the trial court reveals that Rohrs secured Cosmo, but then lost control of that horse right before Cosmo followed plaintiff and Casey into the smaller pasture and kicked plaintiff. To be sure, what happened could be described as negligence by Rohrs, but Rohrs's actions were neither willful nor wanton. Thus, the trial court properly granted summary disposition to defendants on the statutory claims set forth under MCL 691.1665(d).

## C. PLAINTIFF'S REMAINING ARGUMENTS

Although plaintiff was represented by counsel throughout the proceedings in the trial court, she has chosen to take up the cudgels on her own behalf on appeal. The result is an appellate brief that advances a mélange of arguments about claims that were never pleaded and rulings that drew no objection in the trial court. "We review unpreserved issues for plain error." *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). " 'To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.' " *Id.* at 427. No alleged error cited by plaintiff satisfies all three of those requirements.

Plaintiff contends that she has a viable statutory claim under the EALA, MCL 691.1665(b), which allows for recovery if an "equine activity sponsor, equine professional, or other person . . . [p]rovides an equine and fails to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity and to determine the ability of the participant to safely manage the particular equine." The record reflects that defendants Stonehaven and Rohrs not only took steps to ensure that plaintiff had basic experience with a beginner horse like Casey, but also assigned an especially gentle horse, i.e., Casey, to plaintiff. Moreover, Rohrs had observed plaintiff successfully working with Casey during the first lesson before instructing plaintiff to get Casey from the pasture for the second lesson. Under the circumstances, no plain error occurred in the denial of recovery on a statutory claim under MCL 691.1665(b) that plaintiff never pleaded or pressed in the trial court.

Plaintiff insists that defendants violated the EALA by failing to post warning signs required by MCL 691.1666, which specifies the mandatory contents of the warning in subsection (3) of that statute. But prior to her first lesson, plaintiff signed a waiver that included that precise warning in bold, capitalized letters immediately above the signature line where plaintiff signed her name:

WARNING:
UNDER THE MICHIGAN EQUINE ACTIVITY LIABILITY ACT, AN EQUINE PROFESSIONAL IS
NOT LIABLE FOR AN INJURY TO OR THE DEATH OF A PARTICIPANT IN AN EQUINE
ACTIVITY RESULTING FROM AN INHERENT RISK OF THE EQUINE ACTIVITY.
- This form will be used to prove that you understand fully the risks of horseback riding, and that you have made a free choice to ride at Stonehaven Farms.
- This form also restricts or eliminates your liability to file a lawsuit against Donna Rothman, Stonehaven Farms, Tenacityfarm Inc, and it's agents for injuries you may have sustained while on the premises.

_____          6-13-2018
Participants Signature                                              Date

As a result, plaintiff cannot establish that the denial of relief for the failure to post warning signs amounted to plain error that affected substantial rights. Moreover, as we have observed, "[u]nlike the equine activity liability statutes of other states, Michigan's statute contains no specified penalty for the failure to post a sign." *Amburgey*, 238 Mich App at 239. Thus, we cannot figure out what type of remedy plaintiff seeks for the failure to post warning signs, but we have already rejected the argument that immunity under the EALA, MCL 691.1663, is lost by the failure to post warning signs. *Beattie v Mickalich*, 284 Mich App 564, 578-579; 773 NW2d 748 (2009), rev'd on other grounds 486 Mich 1060; 784 NW2d 38 (2010). Therefore, we cannot provide any relief to plaintiff in response to her argument predicated upon MCL 691.1666.

Plaintiff asserts that reversal is required because the trial court was biased against her, but she failed to raise that issue "within 14 days of the discovery of the grounds for disqualification." MCR 2.003(D)(1)(a). Indeed, plaintiff never raised the issue of bias in the trial court, so the trial court never had an opportunity to respond to the allegation. Our independent review of the record reveals that plaintiff's claim of bias is thoroughly meritless. "Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). "A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Id*. Curiously, plaintiff takes aim primarily at counsel for the defendants by accusing her of making false statements to the trial court. Plaintiff relies only secondarily upon the comments and rulings of the trial court to establish bias. Judicial comments and rulings, however, do not provide "a basis for disqualification 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Cain v Dep't of Corrections*, 451 Mich 470, 496; 548 NW2d 210 (1996). We can find no deep-seated favoritism or antagonism in anything the trial court said or did during the proceedings below.

Finally, plaintiff complains about the discovery process from beginning to end, faulting the trial court for extending discovery deadlines, allowing discovery of matters such as her tax returns, and permitting the defense to dictate the terms of discovery. The decision to extend discovery is a matter committed to the sound discretion of the trial court. *Decker v Trux R Us, Inc*, 307 Mich App 472, 478; 861 NW2d 59 (2014). The trial court did not abuse its discretion by extending the discovery cutoff in this case, especially when plaintiff stipulated to an extension of that deadline. Nor can we find any abuse of discretion in the scope of discovery permitted by the trial court under MCR 2.302(B)(1). See *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011). Plaintiff asserts that her tax returns should have been off limits in discovery, but we have explained "that, as a general rule, a party's income tax returns are subject to discovery." *In re Pott*, 234 Mich App 369, 375; 593 NW2d 685 (1999). In a case such as this where plaintiff identified lost wages and "other economic losses" as elements of her damages, the trial court acted within its discretion

in ordering plaintiff to produce three years of tax returns during discovery. In sum, nothing in the record indicates that the trial court impermissibly enabled defendants to take control of discovery. To the extent that the trial court, at the behest of defendants, occasionally intervened to deal with plaintiff's recalcitrance during the discovery process, the trial court—not the defendants—made all of the calls in a manner consistent with the Michigan Court Rules. Thus, plaintiff is entitled to no relief for the trial court's rulings during the discovery process.

Affirmed.

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ Deborah A. Servitto