Griffin, J.
 

 This appeal provides this Court with its first opportunity to construe the Equine Activity Liability Act (eala), MCL 691.1661
 
 et seq:,
 
 MSA 12.418(1)
 
 et seq.
 
 Plaintiff Sharon Amburgey claims injuries to her right arm and left shoulder as a result of having been bitten by a horse named Justin. At the time, Justin was owned by Linda Predhomme.
 
 [1]
 
 Defendant Marilyn Sauder owns and operates the Diamond-S Stables, where the incident in question occurred. Plaintiff appeals as of right from the trial court’s July 28, 1997, and September 17, 1997, orders that, respectively, granted defendant’s motion for summary disposition pursuant to MCR 2.116(C)(7) and (10)
 
 [2]
 
 and denied plaintiff’s motion to file a first amended complaint. We affirm.
 

 i
 

 Plaintiff initially contends that the trial court erred in granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(7). The trial court ruled that plaintiff was a participant engaged in equine activity within the meaning of the EALA and, as such,
 
 *231
 
 her claim against defendant was barred by the terms of the act, which provides in pertinent part:
 

 Except as otherwise provided in section 5, an equine activity sponsor, an equine professional, or another person is not liable for an injury to or death of a participant or property damage resulting from an inherent risk of an equine activity. [MCL 691.1663; MSA 12.418(3).]
 

 On appeal, a trial court’s grant of summary disposition is reviewed de novo.
 
 Spiek v Dep’t of Transportation,
 
 456 Mich 331, 337; 572 NW2d 201 (1998). Specifically, a court’s interpretation of a statute is reviewed de novo on appeal.
 
 Stabley v Huron-Clinton Metropolitan Park Authority,
 
 228 Mich App 363, 366; 579 NW2d 374 (1998). When a motion for summary disposition is premised on MCR 2.116(C)(7), the nonmovant’s well-pleaded allegations must be accepted as true and construed in the nonmovant’s favor and the motion should not be granted unless no factual development could provide a basis for recovery.
 
 Stabley, supra
 
 at 365;
 
 Dewey v Tabor,
 
 226 Mich App 189, 192; 572 NW2d 715 (1997). “[T]he court must consider not only the pleadings, but also any affidavits, depositions, admissions, or documentary evidence that has been filed or submitted by the parties.”
 
 Horace v City of Pontiac,
 
 456 Mich 744, 749; 575 NW2d 762 (1998). If no facts are in dispute, whether the claim is statutorily barred is a question of law.
 
 Dewey, supra
 
 at 192.
 

 The propriety of summary disposition under the eala must be determined in conjunction with the rules of statutory construction. The fundamental purpose of judicial construction of statutes is to ascertain and give effect to the intent of the Legislature.
 
 In
 
 
 *232
 

 re Certified Question,
 
 433 Mich 710, 722; 449 NW2d 660 (1989). Further, “the intention of the Legislature, when discovered, must prevail, any existing rule of construction to the contrary.”
 
 Id.
 
 The first criterion in determining intent is the specific language of the statute.
 
 People v Borchard-Ruhland,
 
 460 Mich 278, 284; 597 NW2d 1 (1999). The Legislature is presumed to have intended the meaning it plainly expressed.
 
 Id.
 
 The court should presume that every word has some meaning and should avoid any construction that would render a statute, or any part of it, surplusage or nugatory.
 
 Altman v Meridian Twp,
 
 439 Mich 623, 635; 487 NW2d 155 (1992). If the language is clear and unambiguous, the court must apply the statute as written.
 
 Borchard-Ruhland, supra.
 
 However, “a dogged literalism should not be employed to defeat the Legislature’s intent.”
 
 Goodridge v Ypsilanti Twp Bd,
 
 451 Mich 446, 453, n 8; 547 NW2d 668 (1996). If reasonable minds could differ regarding the meaning of a statute, the court must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute.
 
 Marquis v Hartford Accident & Indemnity (After Remand),
 
 444 Mich 638, 644; 513 NW2d 799 (1994).
 

 A
 

 There are several facets to plaintiff’s argument that summary disposition was improperly granted in favor of defendant. First, plaintiff argues that the stated purpose of the eala—“to regulate civil liability related to equine activities”—is not synonymous with “immunity granted by law” and therefore summary disposition was inappropriately granted pursuant to MCR
 
 *233
 
 2.116(C)(7).
 
 [3]
 
 Plaintiffs argument is merely a matter of semantics. “Immunity” means “[f]reedom or exemption from penalty, burden, or duty.” Black’s Law Dictionary (6th ed), p 751. Section 3 of the eala provides that
 

 an equine activity sponsor, an equine professional or other person is not hable for an injury to ... a participant . . . resulting from an inherent risk of an equine activity. ... [A]
 
 participant. . . shall not make a claim for, or recover civil damages from an . . . equine professional. . . for injury to ... the participant. . . resulting from an inherent risk of an equine activity.
 
 [MCL 691.1663; MSA 12.418(3) (emphasis added).]
 

 Pursuant to the clear and unambiguous language of the eala, if a participant’s injuries result from an inherent risk of an equine activity, the participant may not make a claim for damages against an equine professional; conversely, the equine professional is free from the “penalty” or “burden” of claims for damages. By providing that a class of persons is not bound or obligated with regard to an injury and by expressly disallowing claims under enumerated circumstances, the Legislature intended to grant immunity to qualifying defendants. MCR 2.116(C)(7) is the appropriate rule under which a defendant may raise a defense by asserting that a claim is barred.
 
 Wilson v Thomas L McNamara, Inc,
 
 173 Mich App 372, 375;
 
 *234
 
 433 NW2d 851 (1988). Plaintiffs argument in this regard is therefore meritless.
 

 B
 

 Plaintiff next contends that the immunity provided by the eala is inapplicable to the present circumstances because she was merely a spectator, not a “participant,” as defined by the eala. We disagree.
 

 Plaintiff was invited by her son’s girlfriend, Amy Mastemak, to watch Mastemak’s riding lesson at defendant’s stable, where Mastemak’s horse was boarded. Plaintiff entered the stable through a side entrance and was given a tour of the facilities by Mastemak. Plaintiff observed Mastemak’s riding lesson, which lasted approximately one hour, and then accompanied Mastemak back into the stable, at which time she fed Mastemak’s horse an apple and briefly assisted in grooming it (the evidence indicated that plaintiff had considerable experience with horses). Soon thereafter, as plaintiff walked down the center aisle of the stable and passed by Justin’s stall, the horse unexpectedly lunged over his closed stall door and bit her in the right arm. As plaintiff tried to break free from his grasp, Justin let go, causing plaintiff to hit the adjacent wall and injure her left shoulder.
 

 The eala delineates participation as follows:
 

 “Participant” means an individual, whether amateur or professional, engaged in an equine activity, whether or not a fee is paid to participate. [MCL 691.1662(g); MSA 12.418(2)(g).]
 

 The activities covered by the eala are also specified:
 

 
 *235
 
 (a) “Engage in an equine activity” means riding, training, driving, breeding, being a passenger upon, or providing or assisting in veterinary treatment of an equine, whether mounted or unmounted.
 
 Engage in an equine activity includes visiting, touring, or utilizing an equine facility as part of an organized event or activity including the breeding of equines, or assisting a participant or show management.
 
 Engage in equine activity does not include spectating at an equine activity, unless the spectator places himself or herself in an unauthorized area and in immediate proximity to the equine activity.
 

 * * *
 

 (c) “Equine activity” means any of the following:
 

 * * *
 

 (ii) Equine training or teaching activities.
 

 (iii) Boarding equines, including their normal daily care. [MCL 691.1662; MSA 12.418(2) (emphasis added).]
 

 We find no error in the trial court’s conclusion that plaintiff was “engaged in an equine activity” and therefore a “participant” under the eala. Plaintiff’s undisputed involvement in touring the facilities and assisting Mastemak, albeit briefly, in the care of her horse following “an organized event or activity” (Mastemak’s scheduled lesson) rendered plaintiff a “participant” in equine activity pursuant to the express language of the eala.
 

 Plaintiff nonetheless asserts that she was not a “participant” with respect to the particular horse that caused her injury. Plaintiff contends that although she interacted with Mastemak’s horse, she did not participate in equine activities with respect to Justin, the altogether different horse that inflicted her injuries. However, the language and intent of the eala are not amenable to such a narrow application of the immu
 
 *236
 
 nity provided therein. The Legislature broadly defined engagement in an equine activity to include “visiting, touring, or utilizing an equine facility” and other circumstances, see generally MCL 691.1662; MSA 12.418(2), obviously recognizing and anticipating that in an environment involving equines, potential liability could arise out of innumerable situations, including instances where, as in the present case, the participant, before the incident or accident, had no direct or meaningful interaction with the particular equine that caused the injury. We find no support for plaintiff’s position in either the language or the intent of the EALA.
 

 c
 

 Noting that the EALA proscribes Lability only for injuries resulting from an “inherent risk of equine activity,” MCL 691.1663; MSA 12.418(3), plaintiff next argues that an “inherent risk” encompasses only normal and anticipated equine behavior. Plaintiff maintains that equine professionals such as defendant are not insulated from liability arising out of unanticipated, abnormal equine behavior such as the unprovoked biting “attack” that occurred herein. Once again, however, plaintiff’s argument has no foundation in either the language or the intent of the act. Indeed, the interpretation accorded to the statute by plaintiff is contradicted by the plain language of the EALA, which provides:
 

 (f) “Inherent risk of an equine activity” means a danger or condition that is an integral part of an equine activity, including, but not limited to, any of the following:
 

 
 *237
 

 (i) An equine’s propensity to behave in ways that may result in injury, harm, or death to a person on or around it.
 

 (iij The unpredictability of an equine’s reaction to things such as sounds, sudden movement, and people, other animals, or unfamiliar objects.
 

 (iii) A hazard such as a surface or subsurface condition.
 

 (iv) Colliding with another equine or object. [MCL 691.1662; MSA 12.418(2) (emphasis added).]
 

 It is clear that the risks imrmmized by the EALA include more than those flowing from an equine’s normal or anticipated behavior. Thus, whether Justin was acting normally when plaintiff was injured is not determinative of whether the risk leading to plaintiff’s injury is included within the scope of the EALA. The statute recognizes that an equine may behave in a way that will result in injury and that equines may have unpredictable reactions to diverse circumstances—precisely one of the guiding motivations for limiting the liability of equine professionals. Because there is no evidence indicating that Justin’s behavior (purportedly stemming from the fact that he became aggravated when distracted from eating) represented anything other than an unpredictable reaction to a person or an unfamiliar object, MCL 691.1662(f)(ii); MSA 12.418(2)(f)(ii), plaintiff’s argument in this regard is without merit.
 

 D
 

 Emphasizing that the eala requires that notice of limited liability be posted on the premises, MCL 691.1666; MSA 12.418(6), plaintiff next asserts that a genuine issue of material fact exists with regard to whether the requisite notice was properly posted.
 
 *238
 
 Plaintiff’s argument is largely based on defendant’s admission that a sign previously posted by the side door of the stable (the entrance used by plaintiff) was missing at the time of the incident because it had been eaten by a goat. In this regard, defendant testified:
 

 Q.
 
 Do you have postings regarding the Equine Liability Act?
 

 A.
 
 Yes.
 

 Q.
 
 Where are those posted?
 

 A.
 
 In the front of the bam.
 

 Q.
 
 Do you have more than one?
 

 A.
 
 We did have, but I think, Ermiene (phonetic) may have eaten it, the goat.
 

 Q.
 
 How many entrances are there to the bam?
 

 A.
 
 There is [sic] three, four, five.
 

 Q.
 
 How many signs for the Equine Liability Act do you have posted?
 

 A.
 
 Well, when you ask how many entrances, that’s how many doors there are. Three of those are back doors for the horses to go out of, in and out of, and, really, there is one front door. That’s where the notice is. There was one on the side aisle but, as I say, I think that got eaten.
 

 Q.
 
 Do you know when it got eaten?
 

 A.
 
 I don’t remember.
 

 Q.
 
 Do you know if it was before June of ‘96?
 

 A.
 
 Yes, it was.
 

 Q.
 
 And by the side aisle, are you saying that there is another door that leads to the front of the bam?
 

 A.
 
 Well, to the side aisle.
 

 Q.
 
 Okay.
 

 A.
 
 Only people who have their horses in that aisle would have business going in there.
 

 
 *239
 
 The eala requires that notice of limited liability be posted on the premises where equine activity takes place:
 

 (1) An equine professional shall post and maintain signs that contain the warning notice set forth in subsection (3).
 
 The signs shall be placed in a clearly visible location in close proximity to the equine activity. The warning notice shall appear on the sign in conspicuous letters no less than 1 inch in height.
 

 (3) A sign or contract described in this section shall contain substantially the following warning notice:
 

 WARNING
 

 Under the Michigan equine activity liability act, an equine professional is not liable for an injury to or the death of a participant in an equine activity resulting from an inherent risk of an equine activity. [MCL 691.1666; MSA 12.418(6) (emphasis added).]
 

 Unlike the equine activity liability statutes of other states, Michigan’s statute contains no specified penalty for the failure to post a sign.
 
 [4]
 
 However, we need not address the issue whether the failure to comply with the notice/posting requirements forfeits protection of the eala because we conclude there was compliance under the present circumstances.
 

 
 *240
 
 It is undisputed that defendant qualifies as an “equine professional” under the eala, having engaged in all the enumerated activities provided by MCL 691.1662(e); MSA 12.418(2)(e) for compensation. Moreover, while plaintiff claims that there was no sign posted near the side entrance that she used, plaintiff does not dispute the testimony of several witnesses that a sign conforming with subsection 6(3) of the eala was posted at the facility’s main entrance.
 

 The posted warning serves the purpose of placing an individual entering areas of equine activity on constructive notice of the owner or operator’s limited liability and presents that individual with a choice regarding whether he wants to venture further at his own risk. The language of the eala is ambiguous, however, with regard to whether the posting of multiple signs is required or whether a single sign or notice in one location on the premises provides adequate warning. Although subsection 6(1) of the eala refers to “signs” in the plural form, placement is to be in a “clearly visible
 
 location
 
 in close proximity to the equine activity,” and “the warning
 
 notice
 
 shall appear on the
 
 sign”
 
 in conspicuous letters (emphasis added). Because subsection 6(1) does not expressly require that a sign be placed at every entrance to an equine facility but rather that it be placed “in a clearly visible location in close proximity to the equine activity,” we conclude that under the present circumstances the single sign posted conspicuously at the main entrance “in a clearly visible location in close proximity to the equine activity” was sufficient to satisfy the warning requirement. As this Court has previously suggested in an analogous context, the focal point in determining compliance with a posted warning requirement
 
 *241
 
 should be whether the responsible party has taken reasonable measures to satisfy the statutory mandate.
 

 In
 
 Barr v Mt Brighton Inc,
 
 215 Mich App 512; 546 NW2d 273 (1996), the plaintiff was rendered a quadriplegic when he skied down a trail and struck a tree at the defendant’s ski resort. The plaintiff alleged that the defendant failed to effectively mark the area as “closed” to skiing in contravention of the Ski Area Safety Act, MCL 408.321
 
 et seq.;
 
 MSA 18.483(1)
 
 et seq.,
 
 and thus was not entitled to the protection of the act’s assumption of risk clause. This Court disagreed, holding as follows:
 

 There axe any number of means by which a skier on top of a hill can ski down that hill. We do not construe this provision to require a ski area operator to affirmatively mark as “closed” each one of the conceivable means by which a skier can ski down a hill. The result of such an obligation would be the encirclement of the top of a hill with “closed” signs, interrupted, perhaps, by one or two signs indicating that an open trail exists. Rather, we interpret MCL 408.326a; MSA 18.483(6a) to impose upon the ski area operator a more limited obligation. Subsection d of § 6a specifies that the operator shall “mark the top of or entrance to each ski run, slope, and trail which is closed to skiing, with an appropriate symbol indicating that the run, slope, or trail is closed.”
 

 We construe this to require only that the operator mark as “closed” those trails in the ski area that normally are open to skiing but that are, at the moment, closed for one reason or another. We do not believe that the operator has an obligation to mark as “closed” every means by which a skier can ski down a hill, including those means that are never or rarely designated as “open” for skiing. To interpret “closed,” without reference to the fact that a trail might otherwise be “open,” would ironically impose less of an “assumption of risk” upon a skier who skis down an obviously dangerous trail, which has never been “open,” and
 
 *242
 
 who confronts one of the hazards set forth in MCL 408.342(2); MSA 18.483(22)(2) than would be imposed upon a skier who confronts a similar hazard while skiing down an “open” trail. We do not believe that this is what the Legislature intended or what it set forth in the Ski Area Safety Act.
 
 [Barr, supra
 
 at 519-520.]
 

 Similarly, in the instant case, which involves like legislation intended to limit the liability of a class of defendants, to require that an equine professional post a warning sign at every conceivable entrance to the professional’s facilities would eviscerate the immunity provided by the EALA. This was not the intent of the Legislature.
 

 We conclude that defendant’s action in posting a conforming sign at the main entrance to the stable, in close proximity to equine activity, constituted compliance with the eala as a matter of law. The fact that plaintiff entered the stable through a side entrance and did not see the sign is inconsequential to the issue of defendant’s compliance with the warning requirement. Actual notice is not required by the eala and thus plaintiff’s failure to see the warning sign posted at the main entrance does not eliminate the protection afforded to defendant by the eala.
 

 E
 

 Next, plaintiff contends that even if the EALA does apply to the present circumstances, it does not prevent or limit liability if the equine professional “commits a negligent act or omission that constitutes a proximate cause of the injury, death, or damage.” MCL 691.1665(d); MSA 12.418(5)(d).
 
 [5]
 
 Plaintiff argues
 
 *243
 
 that a factual dispute exists with regard to whether defendant was negligent in failing to erect an adequate barrier to prohibit Justin’s access to people near his stall, particularly in light of defendant’s purported knowledge of the horse’s tendency to become aggravated if disturbed while eating.
 

 However, plaintiff’s claim that the present circumstances fall within the negligence exception of the eala is dependent on resolution of the second issue presented in this appeal—whether she is entitled to amend her complaint to include such a claim (see subsequent discussion in text). Plaintiff concedes that she alleged and proceeded only on a common-law theory of strict liability in her original complaint and did not plead negligence as a basis of recovery. Plaintiff subsequently moved to amend her complaint to allege negligence; however, the trial court denied plaintiff’s motion. On the basis of our conclusion that the trial court did not abuse its discretion in denying plaintiff’s motion to amend, see subsequent discussion, plaintiff’s negligence claim is not properly at issue in our review of the propriety of the trial court’s order granting summary disposition in favor of defendant.
 

 
 *244
 
 F
 

 Citing
 
 Trager v Thor,
 
 445 Mich 95; 516 NW2d 69 (1994), plaintiff lastly contends that the requisite elements of the sole claim that was asserted in her original complaint—a common-law theory of strict liability—have been undisputedly established under the present circumstances and that defendant is strictly hable for her injuries and damages arising out of the horse bite. In
 
 Trager, supra
 
 at 99, our Supreme Court explained:
 

 There has long existed at common law a cause of action against possessors of certain domestic animals for harm caused by those animals, regardless of fault. This common-law theory of strict liability is accurately stated in 3 Restatement of Torts, 2d, § 509, p 15, as follows:
 

 “(1) A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm.
 

 “(2) This liability is limited to harm that results from the abnormally dangerous propensity of which the possessor knows or has reason to know.”
 

 Strict liability attaches for harm done by a domestic animal where three elements are present: (1) one is the possessor of the animal, (2) one has scienter of the animal’s abnormal dangerous propensities, and (3) the harm results from the dangerous propensity that was known or should have been known.
 

 In the present case, plaintiffs claim stems primarily from evidence of a prior incident in which Justin was alleged to have tugged on Mastemak’s shirt as she passed by his stall. Plaintiff claims that because Mastemak testified that she informed a horse trainer at defendant’s stable of the incident through a note and
 
 *245
 
 during a conversation, defendant had imputed knowledge, the requisite scienter under
 
 Trager,
 
 of Justin’s history of becoming aggravated if approached while eating and thus can be held strictly liable for injuries caused by this dangerous propensity.
 

 However, the eala supersedes the common-law doctrine of strict liability as it pertains to equines. As reflected in its legislative history, the EALA was enacted by the Legislature in an attempt to encourage equine-related activities by limiting civil liability for injuries resulting from risks associated with those activities:
 

 According to a spokesperson for the Michigan Horse Council, at least a third of the state’s public riding stables have closed in the past ten years because of rising costs for liability insurance, not to mention rising costs of horses and equipment and urban sprawl. In fact, according to a 1993 article in the
 
 Detroit Free Press,
 
 insurance carriers stopped writing policies for horse rental operations from 1985 to 1988. At the request of the Michigan Horse Council, legislation has been introduced that would limit liability claims against commercial stable operators.
 

 The bill would create a new act to place certain limits on the civil liability of an “equine professional” or “sponsor of an equine activity” for an injury to or death of a participant or for property damage resulting from a risk normally associated with (an “inherent risk of”) equine activities. The bill also would prohibit people from suing for civil damages for injury or death or property damage resulting from normal risks of equine activities. The bill would require equine professionals to post certain specified warning notices near equine activities and to include such notices in any written contracts for professional services (including instruction and equipment rental). [House Legislative Analysis Section, HB 5006, December 21, 1994.]
 

 
 *246
 
 It is evident that the Legislature enacted the legislation to curb litigation and the correlative rising costs of liability insurance, and to stem the exodus of public stable operators from the industry. Given its clear language and the underlying intent and purpose of the legislation, we hold that the eala supersedes the common law in those situations covered by the act. Plaintiffs claim based on the common-law theory of strict liability has therefore been abolished by the eala.
 

 In conclusion, the facts necessary to determine that plaintiffs claim is barred by the EALA are not in dispute. Plaintiff was a participant in equine activity whose alleged injury resulted from an inherent risk of an equine activity. Consequently, the trial court correctly ruled that plaintiffs claim was barred by the EALA and properly granted summary disposition in favor of defendant pursuant to MCR 2.116(C)(7).
 

 n
 

 In her second issue raised on appeal, plaintiff argues that the trial court abused its discretion in denying her motion to file a first amended complaint adding a negligence claim against defendant. We disagree.
 

 The grant or denial of leave to amend is within the trial court’s discretion.
 
 Weymers v Khera,
 
 454 Mich 639, 654; 563 NW2d 647 (1997);
 
 Phinney v
 
 Perlmutter, 222 Mich App 513, 523; 564 NW2d 532 (1997). Ordinarily, leave to amend a complaint should be “freely given when justice so requires.” MCR 2.118(A)(2). The rules pertaining to the amendment of pleadings are designed to facilitate amendment except when prejudice to the opposing party would result.
 
 Phillips v Deihm,
 
 213 Mich App 389, 393; 541 NW2d 566
 
 *247
 
 (1995). Leave to amend may be denied for particularized reasons, such as undue delay, bad faith, or dilatory motive on the movant’s part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.
 
 Weymers, supra
 
 at 658;
 
 Hakari v Ski Brule, Inc,
 
 230 Mich App 352, 355; 584 NW2d 345 (1998). Delay, alone, does not warrant denial of a motion to amend.
 
 Weymers, supra
 
 at 659. However, a motion may be properly denied if the delay was in bad faith or if the opposing party suffered actual prejudice as a result.
 
 Id.
 
 Prejudice to a defendant that will justify denial of leave to amend is the prejudice that arises when the amendment would prevent the defendant from having a fair trial; the prejudice must stem from the fact that the new allegations are offered late and not from the fact that they might cause the defendant to lose on the merits.
 
 Id.
 
 at 659.
 

 The trial court in the instant case denied plaintiff’s motion because it was “untimely and prejudicial.” Plaintiff nonetheless claims that because the parties “tried” the negligence issue in the motion for summary disposition and in the mediation summary, she was entitled, under MCR 2.118(C)(1),
 
 [6]
 
 to amend her complaint to conform to the evidence. However, a review of the record clearly indicates that the issue of negligence was not tried as provided by MCR
 
 *248
 
 2.118(C)(1). It is undisputed that the issue was discussed during mediation and within defendant’s motion for summary disposition, but in both instances the issue was alluded to by defendant only to show the overall absence of any liability under the circumstances of the case. In deciding defendant’s motion for summaiy disposition, the trial court did not make a ruling on defendant’s fault under the circumstances, but instead ruled that the eala precluded plaintiff’s only asserted claim of strict liability. At no earlier stage in the proceeding were the merits of a claim of negligence ever tried.
 

 The trial court correctly recognized both the prejudice to defendant and the untimeliness of the requested amendment. The chronology of the filings is significant in this respect. The order granting defendant’s motion for summary disposition was entered on July 28, 1997. Plaintiff did not file her motion to amend in connection with her defense to defendant’s motion for summary disposition, but rather filed the motion to amend the day
 
 after
 
 the order granting summary disposition was entered.
 
 [7]
 
 Obviously, the case had been dismissed at the time the motion to amend was filed. At the subsequent hearing on September 17, 1997, the trial court denied plaintiff’s motion to amend, ruling:
 

 
 *249
 
 This is not a matter of merely correcting the record. The summary disposition motion addressed the equine liability act. As far as this Court is concerned, allowing the amendment at this time is untimely and prejudicial.
 

 Because plaintiffs proposed amendment would cause defendant to defend a claim that arose from the identical facts on which plaintiffs properly pleaded claim of strict liability arose, we agree with the trial court that defendant would be prejudiced by allowing the issue of negligence to be introduced after the dismissal of the case.
 
 Weymers, supra.
 
 We therefore conclude that the trial court did not abuse its discretion in denying plaintiffs motion to amend.
 

 Affirmed.
 

 [1]
 

 Predhomme, originally a defendant in this action, was dismissed from the case pursuant to an order of dismissal and is not participating in this appeal.
 

 [2]
 

 Although the trial court’s order does not specify which subsection of MCR 2.116 the court relied on for its decision, a review of the record of the hearing on the motion indicates that it was granted pursuant to MCR 2.116(C)(7) on the basis of immunity granted by the act.
 

 [3]
 

 MCR 2.116(C)(7) sets forth the following grounds for summary disposition:
 

 The claim is barred because of release, payment, prior judgment,
 
 immunity granted by law,
 
 statute of limitations, statute of frauds, an agreement to arbitrate, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action. [Emphasis added.]
 

 [4]
 

 For example, Alabama’s version of the equine activity act, Ala Code 6-5-337(d)(3) (1997) provides:
 

 Failure to comply with the requirements concerning warning signs and notices provided in this section shall prevent an equine-activity sponsor or equine professional from invoking the privileges of immunity provided by this section. See, generally, Centner,
 
 The New Equine Liability Statutes,
 
 62 Tenn L R 997 (1995).
 

 [5]
 

 Section 5 of the act provides:
 

 
 *243
 
 Section 3 does not prevent or limit the liability of an equine activity sponsor, equine professional, or another person if the equine activity sponsor, equine professional, or other person does any of the following:
 

 * ** *
 

 (d) Commits a negligent act or omission that constitutes a proximate cause of the injury, death, or damage. [MCL 691.1665; MSA 12.418(5).]
 

 [6]
 

 MCR 2.118(C)(1) provides:
 

 When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings. In that case, amendment of the pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment.
 

 [7]
 

 The motion to amend, dated July 27, 1997, was received for filing by the circuit court on August 6, 1997. Plaintiff also filed a claim of appeal on August 8, 1997. The day before the hearing on plaintiffs motion to amend, this Court on its own motion dismissed plaintiff’s appeal because the July 28, 1997, order was not a final judgment (at that time codefendant Linda Predhomme was still named in the case and had not yet been dismissed as a party to the action).