*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

VIOLET LAPEER,

UNPUBLISHED
May 6, 2021

Plaintiff-Appellant,

v

No. 352737
Otsego Circuit Court
LC No. 19-017726-NO

OTSEGO COUNTY FAIR ASSOCIATION,

Defendant-Appellee.

Before: JANSEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals as of right the order of the trial court granting defendant summary disposition of her personal injury claim under MCR 2.116(C)(8) and (10). We affirm.

## I. FACTS

This case arises from injuries plaintiff incurred while attending a horse show at the Otsego County Fairgrounds. On May 21, 2018, defendant sponsored an evening horse show at the fairgrounds. On that day, plaintiff and her husband drove their truck to the fairgrounds for the purpose of transporting their daughter and granddaughter, who were then minors, together with three horses owned by plaintiff, to the fairgrounds to enable the two girls to exhibit the horses in the show. Upon arriving at the fairgrounds, plaintiff completed the required paperwork for her daughter and granddaughter to enable the girls to exhibit the horses, including signing releases of liability for both girls. Plaintiff testified that she did not otherwise assist the girls while at the show but instead watched the show from the bleachers and from a grassy area next to the bleachers.

After the show, plaintiff waited in the grassy area next to the arena as her family prepared to leave. While plaintiff waited, an exhibitor who had entered the arena with her horse suddenly lost control of the horse. The horse ran through the fence next to where plaintiff was standing, breaking two of the three horizontal boards of the fence section. The fence boards struck plaintiff, knocking her to the ground, and breaking her left wrist and injuring her back.

Plaintiff filed this action against defendant alleging that her injuries were the direct and proximate result of impact with the horse and arose from defendant's negligence. She alleged that

defendant failed to make reasonable efforts to ensure her safety, knew or should have known that the fence was insufficient to confine a runaway horse, and created an unforeseeable risk by failing to maintain or provide fencing that could contain horses within the arena. Plaintiff alleged that her claims were not barred by Michigan's Equine Activity Liability Act (EALA), MCL 691.1661 *et seq*., because she was not a participant in the horse show.

Defendant moved for summary disposition under MCR 2.116(C)(7), (8), and (10), contending that there was no genuine issue of material fact that plaintiff's claims were barred by the EALA. The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(8) and (10), finding that plaintiff's claims were barred by the EALA. Plaintiff now appeals.

## II. ANALYSIS

Plaintiff contends that the trial court erred by granting defendant summary disposition of her claims. She contends that the EALA does not bar her claim because she was not a participant in an equine activity and because her injuries were not the result of an inherent risk of an equine activity. Plaintiff further contends that the trial court erred by holding that no exceptions to the immunity from liability granted by the EALA, set forth under MCL 691.1665, apply.

### A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint; in determining a motion under MCR 2.116(C)(8), all well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. *Id*. A motion for summary disposition under MCR 2.116(C)(8) is properly granted when, considering only the pleadings, the alleged claims are clearly unenforceable as a matter of law and no factual development could justify recovery. *Id*.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. When reviewing a motion for summary disposition granted under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is warranted under MCR 2.116(C)(10) when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citations omitted).

In addition, when determining the propriety of granting summary disposition based upon immunity granted under the EALA, we consider the rules of statutory construction, including consideration of the intent of the Legislature in enacting the EALA. *Amburgey v Sauder*, 238 Mich App 228, 231-232; 605 NW2d 84 (1999).

### B. EQUINE ACTIVITY LIABILITY ACT

The EALA was enacted to limit the liability of equine activity sponsors for injuries resulting from the inherent risks of equine activity. See *Woodman v Kera LLC*, 486 Mich 228,

292; 785 NW2d 1 (2010) (opinion by MARKMAN, J). The intent of the Legislature in enacting the EALA was "to curb litigation and the correlative rising costs of liability insurance, and to stem the exodus of public stable operators from the industry." *Amburgey*, 238 Mich App at 246. To that end, the EALA grants broad immunity from tort liability to an equine activity sponsor, as defined in the act. Section 3 of the act provides:

> Except as otherwise provided in section 5 [MCL 691.1665], an equine activity sponsor, an equine professional, or another person is not liable for an injury to or the death of a participant or property damage resulting from an inherent risk of an equine activity. Except as otherwise provided in section 5, a participant or participant's representative shall not make a claim for, or recover, civil damages from an equine activity sponsor, an equine professional, or another person for injury to or the death of the participant or property damage resulting from an inherent risk of an equine activity. [MCL 691.1663.]

An "equine activity sponsor" is defined by the act, in relevant part, as "an individual, group, club, partnership, or corporation, whether or not operating for profit, that sponsors, organizes, or provides the facilities for an equine activity, . . ." MCL 691.1662(d). A "participant" is defined by the act as "an individual, whether amateur or professional, engaged in an equine activity, whether or not a fee is paid to participate." MCL 691.1662(g). An "equine activity" is defined by the act to include "[a]n equine show, fair, competition, performance, or parade. . . ." MCL 691.1662(c). The act defines "engage in an equine activity" as follows:

> "Engage in an equine activity" means riding, training, driving, breeding, being a passenger upon, or providing or assisting in veterinary treatment of an equine, whether mounted or unmounted. Engage in an equine activity includes **visiting, touring, or utilizing an equine facility as part of an organized event** or activity including the breeding of equines, or **assisting a participant** or show management. Engage in equine activity **does not include spectating** at an equine activity, unless the spectator places himself or herself in an unauthorized area and in immediate proximity to the equine activity. [MCL 691.1662(a) (emphasis added).]

To summarize, the EALA precludes a participant in an equine activity from asserting a claim against an equine activity sponsor for injuries arising from an inherent risk of an equine activity. *Amburgey*, 238 Mich App at 233. A person is a participant if "engaged in an equine activity," and a person is engaged in an equine activity if, among other things, the person is "assisting a participant." Thus, a person assisting someone engaged in equine activity is herself considered to be engaged in an equine activity, and thus is herself a participant.

In this case, the parties do not dispute that defendant was an equine activity sponsor at the time of plaintiff's injury. The parties do dispute, however, whether plaintiff was a participant in an equine activity and whether her injures arose from the inherent risk of an equine activity. Plaintiff argues that she was not a participant at the horse show, but instead was a spectator. The EALA provides that engaging in equine activity does not include "spectating at an equine activity, unless the spectator places himself or herself in an unauthorized area and in immediate proximity to the equine activity." MCL 691.1662(a).

When addressing issues of statutory construction, it is presumed that the Legislature "intended the meaning it plainly expressed." *Amburgey*, 238 Mich App at 232. In addition, this Court has held that the EALA is clear and unambiguous, and does not require judicial interpretation. *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 12; 614 NW2d 169 (2000). However, the EALA does not define what constitutes a spectator. Because the act does not define the term, we give it its plain and ordinary meaning, and may consult dictionary definitions to do so. *Comerica, Inc v Dep't of Treasury*, 332 Mich App 155, 165; 955 NW2d 593 (2020). A spectator is defined as "one who looks on or watches." *Merriam-Webster's Collegiate Dictionary* (11th ed). But although watching a horse show makes one a spectator, watching a horse show does not preclude a person from also being a participant engaged in an equine activity under the EALA.

In this case, the record indicates that plaintiff watched the horse show, and therefore was spectating. The question, however, is whether she also was a participant under the EALA. Plaintiff asserts that her involvement with the horse show on the day of her injury was limited to transporting her daughter and granddaughter to the fairgrounds, transporting three horses that she owned to the fairgrounds for the two girls to exhibit, completing entry paperwork and signing releases of liability for her daughter and granddaughter, and watching the show with her family from the bleachers and the grassy area next to the arena. The trial court concluded that these activities were sufficient for plaintiff to become a participant within the meaning of the EALA.

This Court has broadly construed who is considered a participant under the EALA. In *Amburgey*, a family friend invited the plaintiff to the defendant's stable where the friend boarded her horse. *Amburgey*, 238 Mich App at 234. The friend gave the plaintiff a tour of the defendant's stables, the plaintiff watched the friend's riding lesson, and afterward the friend and the plaintiff fed and groomed the friend's horse. *Id*. As the plaintiff left the stable, another horse unexpectedly lunged over its stall door and bit the plaintiff's arm. *Id*. The trial court concluded, and this Court agreed, that the plaintiff was a participant as defined by the EALA because, although she was not a participant with respect to the horse that bit her, by her activities at the stable she nonetheless was engaged in an equine activity. *Id*. at 235. This Court reasoned that the language and intent of the EALA lend themselves to a broad interpretation "recognizing and anticipating that in an environment involving equines, potential liability could arise out of innumerable situations, including instances where, as in the present case, the participant, before the incident or accident, had no direct or meaningful interaction with the particular equine that caused the injury." *Id*. at 236.

Considering the EALA's broad grant of immunity from tort liability to equine activity sponsors, we conclude that the record supports the trial court's finding that plaintiff was a participant because she was engaged in an equine activity at the time she was injured. Although spectating is not engaging in an equine activity, "visiting, . . . or utilizing an equine facility as part of an organized event" and "assisting a participant" constitute engaging in an equine activity. MCL 691.1662(a). Here, the evidence demonstrates that plaintiff and her husband drove their minor daughter and minor granddaughter to the fairgrounds to enable them to participate in the horse show. Together with her husband, she also transported three horses that belonged to her to the fairgrounds for her daughter and granddaughter to exhibit in the show. Upon arriving at the fairgrounds, plaintiff assisted the two girls in entering the show by completing entry paperwork and signing the releases of liability. Because plaintiff visited an equine facility as part of an

organized event and assisted two participants exhibiting in the event, the trial court did not err by concluding that there was no genuine issue of material fact that plaintiff was a participant engaged in an equine activity at the time of her injury.

Plaintiff contends, however, that even if she were a participant engaged in an equine activity at the time of her injury, she is not precluded by the EALA from asserting her claim because her injury did not arise from an inherent risk of equine activity. Plaintiff argues that a genuine issue of material fact remains regarding whether her injuries were the result of an inherent risk of equine activity or instead were the result of defendant's negligence or mismanagement of the arena.

The EALA defines "inherent risk of equine activity" as follows:

"Inherent risk of equine activity" means a danger or condition that is an integral part of an equine activity, including, but not limited to, any of the following:

(*i*) An equine's propensity to behave in ways that may result in injury, harm, or death to a person on or around it.

(*ii*) The unpredictability of an equine's reaction to things such as sounds, sudden movement, and people, other animals, or unfamiliar objects.

(*iii*) A hazard such as a surface or subsurface condition.

(*iv*) Colliding with another equine or object. [MCL 691.1662(f).]

As discussed, by enacting the EALA the Legislature intended to grant broad immunity to equine activity sponsors from liability for the injuries caused by the unpredictable nature of horses. See *Amburgey*, 238 Mich App at 236. In this case, the evidence demonstrates that after the show concluded, plaintiff was standing in the grassy area located next to the arena when an exhibitor practicing in the arena lost control of her horse. The horse broke two of the three horizontal boards of a fence section, which struck plaintiff and injured her. An exhibitor losing control of a horse, which then collides with a fence, the pieces of which then strike and injure another participant is a condition integral to an equine activity; it is perhaps the archetypal scenario arising from "an equine's propensity to behave in ways that may result in injury" and "the unpredictability of an equine's reaction" and "colliding with another equine or object" described in the act. It is thus precisely the type of incident from which the Legislature determined to provide immunity from liability to equine activity sponsors. We therefore conclude that the trial court did not err in finding that plaintiff's injury arose from the inherent risk of equine activity.

## C. EXCEPTIONS TO THE EALA

Plaintiff contends, however, that even if she were a participant as defined by the EALA and her injuries were the result of an inherent risk of equine activity, a question of fact remains regarding whether the exceptions to the limitation of an equine activity sponsor's liability set forth in MCL 691.1665(c) and (d) apply in this case. Plaintiff argues that a question of fact remains regarding whether her injuries were proximately caused by defendant's negligent management of the show and its facility and from defendant's willful or wanton disregard for her safety, and

therefore fall within the statutory exceptions to the limitation of liability granted to an equine activity sponsor.

Under the EALA, a person engaged in an equine activity, who ordinarily would be precluded by the act from bringing suit against an equine activity sponsor, may do so if one of the exceptions listed in MCL 691.1665 applies. That statutory section sets forth exceptions to the limitation of an equine activity sponsor's liability and provides, in relevant part:

> Section 3 [MCL 691.1663] does not prevent or limit the liability of an equine activity sponsor, equine professional, or another person if the equine activity sponsor, equine professional, or other person does any of the following:
>
> * * *
>
> (c) Owns, leases, rents, has authorized use of, or otherwise is in lawful possession and control of land or facilities on which the participant sustained injury because of a dangerous latent condition of the land or facilities that is known to the equine activity sponsor, equine professional, or other person and for which warning signs are not conspicuously posted.
>
> (d) If the person is an equine activity sponsor or equine professional, commits an act or omission that constitutes a willful or wanton disregard for the safety of the participant, and that is a proximate cause of the injury, death, or damage. . . . [MCL 691.1665.]

In this case, after determining that plaintiff was precluded under MCL 691.1663 from bringing suit against defendant, the trial court also determined that none of the exceptions of MCL 691.1665 applied. We agree that MCL 691.1665(c) and (d) are inapplicable in this case. No evidence was presented that defendant mismanaged the horse show or the facilities. There was no evidence presented that the fence was broken or otherwise in a dangerous condition before the horse unexpectedly ran through it. There was no evidence presented that it was improper to allow exhibitors to reenter the arena after the show; indeed, plaintiff, a person experienced with horses who attends horse shows regularly, testified that it is a common and accepted practice for an exhibitor to reenter the arena with a horse after a competition. There was thus no evidence that plaintiff's injury was sustained because of a dangerous latent condition of the facilities or from a willful or wanton disregard for her safety by defendant. Rather, the evidence demonstrated that the proximate cause of plaintiff's injuries was the unpredictable behavior of a horse. Accordingly, no genuine issue of material fact remains that the exceptions set forth in MCL 691.1665(c) and (d) are inapplicable.

In sum, the undisputed facts on the record establish that plaintiff was a participant in an equine activity at the time she was injured, her injury resulted from an inherent risk of equine activity, and none of the exceptions to the limitation of an equine activity sponsor's liability set forth in the EALA apply in this case. The trial court therefore correctly determined that plaintiff's

claim is barred by the EALA, and did not err in granting defendant summary disposition under MCR 2.116(C)(8) and (10).[1]

Affirmed.

/s/ Kathleen Jansen
/s/ Michael F. Gadola

---

[1] On that basis, defendant also was entitled to summary disposition under MCR 2.116(C)(7).  See *Amburgey*, 238 Mich App at 233.