*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

REBECCA GOCH,

        Plaintiff-Appellant,

v

THE EDISON INSTITUTE, doing
business as THE HENRY FORD, and
ANDREW KLOCEK,

        Defendants-Appellees.

FOR PUBLICATION
October 17, 2025
1:47 PM

No. 371176
Wayne Circuit Court
LC No. 23-005166-NO

Before: FEENEY, P.J., and BORRELLO and BAZZI, JJ.

BORRELLO, J.

In this negligence action, plaintiff Rebecca Goch appeals as of right from the trial court's order granting summary disposition in favor of defendants, The Edison Institute, conducting business as The Henry Ford, and Andrew Klocek, predicated on the Equine Activity Liability Act (EALA), MCL 691.1661 et seq. For the reasons set forth in this opinion, we affirm the trial court's decision.

## I. BACKGROUND

The pertinent facts of this case are relatively undisputed. The Edison Institute operates Greenfield Village in Dearborn, Michigan. On July 9, 2022, plaintiff, accompanied by family members, visited the venue. After several hours of touring, they boarded a horse-drawn carriage, known as an omnibus, operated by Klocek. A pair of horses, one named Sam, pulled the omnibus. During the ride, Sam rubbed his bridle against the accompanying horse, Ben, which caused the bridle to dislodge. As Sam's bridle came off, his winker braces (blinders) similarly fell away, granting him full peripheral vision. Subsequently, Sam became agitated and bolted, with Ben also accelerating due to their tandem working nature. Klocek lost control of Sam, which in turn complicated his ability to manage Ben, ultimately necessitating Klocek to steer the horses and the carriage into a lamp post to halt the runaway.

During this incident, plaintiff, seated at the rear of the omnibus with her family, was "tossed around" and struck her head against either the seat or the floor of the carriage. Consequently, she

claims to have suffered from "floaters" in her vision and persistent blurred vision, purportedly due to the injuries incurred during the incident involving the runaway carriage.

Plaintiff filed her lawsuit in April 2023, alleging several counts: negligence against The Edison Institute and Klocek (Count I), negligent training and supervision against The Edison Institute (Count II), and res ipsa loquitur against The Edison Institute (Count III). Defendants moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10), contending that (1) immunity granted by the EALA barred the plaintiff's negligence claims, (2) defendants did not engage in "willful and wanton" misconduct that would fall outside the EALA's immunity provisions, and (3) the principle of res ipsa loquitur failed to establish an independent cause of action.

In response, plaintiff contended that her claims were not precluded by the EALA since she was not a passenger "upon" a horse and therefore not engaged in an equine activity as defined by the statute. She asserted that the statutory construction of equine activity does not encompass passengers on horse-drawn carriages. Additionally, she maintained that genuine issues of material fact existed that could preclude summary disposition concerning whether defendants' actions fell within two exceptions to EALA's immunity—the faulty tack exception and the willful-and-wanton misconduct exception—wherein defendants could be liable notwithstanding the applicability of the EALA. Lastly, plaintiff argued that she had adequately pled and presented admissible evidence supporting each element of res ipsa loquitur.

Following a hearing on the motions' hearing, the trial court articulated its reasoning as follows:

> The horse in this case wiggled loose, got out of the bridle. This was not due to any action of the driver; the horse ran away. The driver, in a bid to stop the carriage, ran into a pole to minimize damage. There's insufficient evidence to indicate gross negligence on the part of the driver, which renders this an accident rather than a failure in duty. Therefore, under the Equine Activity Liability Act, the Plaintiff's Complaint fails to establish a basis for relief, leading to summary disposition for both Defendants.

Consequently, the trial court issued an order granting defendants' motion for summary disposition and dismissing plaintiff's complaint with prejudice. The court also denied plaintiff's motion for reconsideration, resulting in this appeal.

## II. STANDARD OF REVIEW

This Court reviews the trial court's summary disposition decisions de novo. *Krieger v Dep't of Environment, Great Lakes, & Energy*, 348 Mich App 156, 170; 17 NW3d 700 (2023), while defendants moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10), the trial court did not specify which subrule served as the basis for its ruling.

MCR 2.116(C)(7) provides that summary disposition is warranted when liability is barred by "immunity granted by law . . . ." This Court has held that in § 3 of the EALA, the Legislature

"intended to grant immunity to qualifying defendants" and that MCR 2.116(C)(7) is therefore "the appropriate rule under which a defendant may raise a defense by asserting that a claim is barred." *Amburgey v Sauder*, 238 Mich App 228, 233; 605 NW2d 84 (1999), citing MCL 691.1663.

Under MCR 2.116(C)(7), "the nonmovant's well-pleaded allegations must be accepted as true and construed in the nonmovant's favor," and the court must also consider "any affidavits, depositions, admissions, or documentary evidence that has been filed or submitted by the parties." *Amburgey*, 238 Mich App at 231 (quotation marks and citation omitted). "If no facts are in dispute, whether the claim is statutorily barred is a question of law." *Id*.

Similarly, when considering a motion under MCR 2.116(C)(10), the court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion," granting the motion only if "the record leaves open an issue upon which reasonable minds might differ." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks and citation omitted). When considering a motion under MCR 2.116(C)(8), however, the court "must accept all factual allegations as true, deciding the motion on the pleadings alone." *El-Khalil*, 504 Mich at 160.

Questions of law, including issues of statutory interpretation, are reviewed de novo. *Kocher v Dep't of Treasury*, 241 Mich App 378, 380; 615 NW2d 767 (2000); *Amburgey*, 238 Mich App at 231.

### III. ANALYSIS

Plaintiff contends that, by virtue of her status as a passenger in the carriage, she does not qualify as a "participant" in an equine activity as defined under the EALA. Consequently, she asserts that the trial court erred in granting the defendants immunity based on the provisions of the EALA. Plaintiff specifically emphasizes that she did not engage in any direct interaction with the horses that were harnessed to the carriage and that she was not physically riding on either horse.

Resolution of plaintiff's arguments involves statutory interpretation. "The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012) (quotation marks and citation omitted). We thus begin with the "language of the statute itself," and "[u]nless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Id*. (quotation marks and citation omitted). "The meaning of statutory terms may also be deduced from their context," and "words grouped in a list should be given related meaning." *Manuel v Gill*, 481 Mich 637, 649-650; 753 NW2d 48 (2008) (quotation marks and citation omitted). This Court may also "consult dictionary definitions to give words their common and ordinary meaning." *Spectrum Health*, 492 Mich at 515 (quotation marks and citation omitted).

Turning to the statutory language at issue, § 3 of the EALA provides:

> Except as otherwise provided in section 5, an equine activity sponsor, an equine professional, or another person is not liable for an injury to or the death of a participant or property damage resulting from an inherent risk of an equine activity.

Except as otherwise provided in section 5, a participant or participant's representative shall not make a claim for, or recover, civil damages from an equine activity sponsor, an equine professional, or another person for injury to or the death of the participant or property damage resulting from an inherent risk of an equine activity. [MCL 691.1663.]

Section 5 provides in turn as follows:

Section 3 does not prevent or limit the liability of an equine activity sponsor, equine professional, or another person if the equine activity sponsor, equine professional, or other person does any of the following:

(a) Provides equipment or tack and knows or should know that the equipment or tack is faulty, and the equipment or tack is faulty to the extent that it is a proximate cause of the injury, death, or damage.

(b) Provides an equine and fails to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity and to determine the ability of the participant to safely manage the particular equine. A person shall not rely upon a participant's representations of his or her ability unless these representations are supported by reasonably sufficient detail.

(c) Owns, leases, rents, has authorized use of, or otherwise is in lawful possession and control of land or facilities on which the participant sustained injury because of a dangerous latent condition of the land or facilities that is known to the equine activity sponsor, equine professional, or other person and for which warning signs are not conspicuously posted.

(d) If the person is an equine activity sponsor or equine professional, commits an act or omission that constitutes a willful or wanton disregard for the safety of the participant, and that is a proximate cause of the injury, death, or damage.

(e) If the person is not an equine activity sponsor or equine professional, commits a negligent act or omission that constitutes a proximate cause of the injury, death, or damage. [MCL 691.1665.]

Section 2 of the EALA contains the following relevant definitions:

As used in this act:

(a) "Engage in an equine activity" means riding, training, driving, breeding, being a passenger upon, or providing or assisting in veterinary treatment of an equine, whether mounted or unmounted. Engage in an equine activity includes visiting, touring, or utilizing an equine facility as part of an organized event or activity including the breeding of equines, or assisting a participant or show management. Engage in equine activity does not include spectating at an equine

activity, unless the spectator places himself or herself in an unauthorized area and in immediate proximity to the equine activity.

(b) "Equine" means horse, pony, mule, donkey, or hinny.

(c) "Equine activity" means any of the following:

(*i*) An equine show, fair, competition, performance, or parade including, but not limited to, dressage, a hunter and jumper horse show, grand prix jumping, a 3-day event, combined training, a rodeo, riding, driving, pulling, cutting, polo, steeplechasing, English and western performance riding, endurance trail riding, gymkhana games, and hunting.

(*ii*) Equine training or teaching activities.

(*iii*) Boarding equines, including their normal daily care.

(*iv*) Breeding equines, including the normal daily care and activities associated with breeding equines.

(*v*) Riding, inspecting, or evaluating an equine belonging to another, whether or not the owner receives monetary consideration or another thing of value for the use of the equine or is permitting a prospective purchaser of the equine or an agent to ride, inspect, or evaluate the equine.

(*vi*) A ride, trip, hunt, or other activity, however informal or impromptu, that is sponsored by an equine activity sponsor.

(*vii*) Placing or replacing a horseshoe on or hoof trimming of an equine.

(d) "Equine activity sponsor" means an individual, group, club, partnership, or corporation, whether or not operating for profit, that sponsors, organizes, or provides the facilities for an equine activity, including, but not limited to, a pony club; 4-H club; hunt club; riding club; school- or college-sponsored class, program, or activity; therapeutic riding program; stable or farm owner; and operator, instructor, or promoter of an equine facility including, but not limited to, a stable, clubhouse, ponyride string, fair, or arena at which the equine activity is held.

(e) "Equine professional" means a person engaged in any of the following for compensation:

(*i*) Instructing a participant in an equine activity.

(*ii*) Renting an equine, equipment, or tack to a participant.

(*iii*) Providing daily care of horses boarded at an equine facility.

(*iv*) Training an equine.

(*v*) Breeding of equines for resale or stock replenishment.

(f) "Inherent risk of an equine activity" means a danger or condition that is an integral part of an equine activity, including, but not limited to, any of the following:

(*i*) An equine's propensity to behave in ways that may result in injury, harm, or death to a person on or around it.

(*ii*) The unpredictability of an equine's reaction to things such as sounds, sudden movement, and people, other animals, or unfamiliar objects.

(*iii*) A hazard such as a surface or subsurface condition.

(*iv*) Colliding with another equine or object.

(g) "Participant" means an individual, whether amateur or professional, engaged in an equine activity, whether or not a fee is paid to participate. [MCL 691.1662.]

In *Amburgey*, 238 Mich App at 244, this Court explained that there "has long existed at common law a cause of action against possessors of certain domestic animals for harm caused by those animals, regardless of fault," with strict liability attaching "for harm done by a domestic animal where three elements are present: (1) one is the possessor of the animal, (2) one has scienter of the animal's abnormal dangerous propensities, and (3) the harm results from the dangerous propensity that was known or should have been known." (Quotation marks and citations omitted.) However, this Court has held that "the EALA supersedes the common-law doctrine of strict liability as it pertains to equines." *Id*. at 245. The " 'EALA was enacted by the Legislature in an attempt to encourage equine-related activities by limiting civil liability for injuries resulting from risks associated with those activities[.]' " *Britten v Circle H Stables, Inc*, 348 Mich App 208, 215; 18 NW3d 329 (2023), quoting *Amburgey*, 238 Mich App at 245 (alteration in original); accord *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 12; 614 NW2d 169 (2000) ("The legislative history shows that the purpose behind the EALA was to protect commercial riding stables from claims for damages resulting from the inherent risks of horseback riding and being around horses.").

Moreover, the broad definition in MCL 961.1662(a) for engagement in an equine activity shows that the Legislature "obviously recogniz[ed] and anticipat[ed] that in an environment involving equines, potential liability could arise out of innumerable situations, including instances where, as in the present case, the participant, before the incident or accident, had no direct or meaningful interaction with the particular equine that caused the injury." *Amburgey*, 238 Mich App at 236 (rejecting the plaintiff's argument that she was not a "participant" with respect to the specific horse that bit her and caused her injury because the plaintiff had only interacted with a *different* horse).

The issue before us here is whether a passenger on a horse-drawn carriage is "[e]ngage[d] in an equine activity" for purposes of the EALA. Plaintiff maintains that although she rode in the

horse-drawn carriage, she was not a "participant" engaged in an equine activity because she was not "riding" or "a passenger upon" an equine.[1]

Relevant to deciding this issue, an "equine activity sponsor," "equine professional," or any other individual is not liable for injuries incurred by a participant due to the inherent risks associated with equine activities, as outlined by MCL 691.1663. Under the EALA, an individual "engaged in an equine activity" qualifies as a "participant" (MCL 691.1662(g)). The act of "driving" is recognized as a form of participation in an equine activity (MCL 691.1662(a)).

The term "drive" is typically defined to encompass directing the movement and course of a draft animal, operating a vehicle, or being transported in a vehicle, as per Merriam-Webster's Collegiate Dictionary (11th ed). In noun form, "drive" may also refer to a journey in a carriage. Additionally, "draft" in the context of "draft animal" is defined as animals employed or suited for pulling loads, which often refers to "draft horses." A "carriage" is characterized as a wheeled vehicle, particularly a horse-drawn vehicle intended for private use and comfort.

Moreover, the statutory definition of "engaging in an equine activity" includes the act of "being a passenger upon" (MCL 691.1662(a)). It is significant to note that the term "equine" in this context is grammatically associated with the subsequent clause, regarding "providing or assisting in veterinary treatment of an equine." Therefore, "being a passenger upon" does not narrowly apply only to individuals physically seated on an equine.

Consequently, we find that "being a passenger upon" encompasses those riding in a horse-drawn carriage. This interpretation aligns with our Legislature's comprehensive definition of what constitutes engagement in equine activities under the EALA, as well as our prior decision in *Amburgey*, 238 Mich App at 236 and our Supreme Court's holding in *Manuel*, 481 Mich at 649-650. Thus, plaintiff has failed to establish that the trial court erred in granting the defendant summary disposition based on the immunity provisions provided under the EALA.

Affirmed. Defendant having prevailed is entitled to costs. MCR 7.219.

/s/ Stephen L. Borrello
/s/ Kathleen A. Feeney
/s/ Mariam S. Bazzi

---

[1] On appeal, plaintiff does not challenge the trial court's ruling regarding "gross negligence," and we therefore need not address that issue.